YARRUT, Judge.
This appeal was taken from a judgment ordering Defendant, New Orleans Silversmiths, Inc., to vacate the premises 505 Royal Street under a summary eviction proceeding.
The record reflects that Karl Dingeldein entered into a written contract of lease with the owner of this property for the period beginning October 1, 1965, and ending on the last day of September, 1968. Under the agreement the lessee was not permitted to sublease without the written consent of the lessor. Before the effective date of this lease, the lessee died. At that time the premises were used to operate two businesses, a pastry shop known as “Four Seasons”, and a silversmith shop. Both enterprises had been operated by the Dingeldein family. The pastry shop has continued in business under the management of Katy Dingeldein and her daughter Johanna; however, the silversmith business was sold.
The heirs of Karl Dengeldein entered into a contract with Hans Luetkemeier, wherein Luetkemeier agreed to operate the silversmith business for a period of one year beginning December 15, 1965, in consideration for his paying the Dingeldeins one-half of the profits. Leutkemeier was also given an option to purchase the business at the end of this period.
The initial agreement between the Ding-eldeins and Luetkemeier reads, in part:
“ * * * Mrs. D. et al agrees that as part of the consideration of purchasing the business she will guarantee * * * the lease of the present retail store and work shop area for the rental of $100.00 per month until January 1, 1968. * * * ”
This contract was negotiated by Carl A. Dengel, son of Katy Dingeldein, on behalf of himself, his mother and his sister.
On December 27, 1966, the option to purchase was exercised. Before buying the business, Luetkemeier and Paul J. Leaman, Jr. formed a corporation called New Orleans Silversmiths, Inc., and purchased it through their corporation. The agreement of purchase is silent as to occupancy of the premises at 505 Royal Street by the silversmith business. That this was discussed by vendor and vendee in negotiating the sale of the business is apparent from the record.
According to Carl Dengel, he guaranteed occupancy through September 30, 1968, the duration of the lease between the owner and Karl Dingeldein. Because the primary lease negated the right to sublease, Dengel said he made it clear that the silversmith business could occupy the premises under a gentlemen’s agreement. While Dengel admits there was some discussion concerning occupancy after that date, he insists no guarantees were made.
Conversely, Leaman contends that Dengel promised that, if the Dingeldein interest could obtain another lease from the owner of the property after September 30, 1968, then the silversmith shop could continue to occupy the portion of the building used for its business as sublessee. He further testified that the parties agreed New Orleans Silversmiths, Inc., would share a proportion of the rent increase.
*688 The sublessee made its rent checks payable to Four Seasons, Inc., pursuant to the instructions of Dengel who advised the tenants the corporate account was an operational account.
On September 10, 1968, Four Seasons, Inc. issued notices to vacate to the original sublessee, Hans Luetkemeier and to the New Orleans Silversmiths, Inc. On September 28, 1968, Paul J. Leaman, Jr. wrote to Mrs. Dingeldein on behalf of the sub-lessee corporation tendering $145.29 for the month of October, 1968. The check was not negotiated nor was it tendered back to the sublessee.
While Four Seasons, Inc. issued the notice to vacate on September 10, 1968, it did not become the lessee under the contract of primary lease until October 1, 1968. Karl Dingeldein was the lessee in the lease for the 1965-1968 lease. When he died no new written instrument was drafted naming a new lessee. In December, 1966, when Carl Dengel was negotiating to sell the silversmith business, he also was attempting to lease the Royal Street property for a period beyond September 30, 1968. The owner signed a lease for the period October, 1968, through September, 1970, naming Carl Dengel as lessee. However, at the request of Mrs. Katy Dingeldein, it was reissued with Four Seasons, Inc. named as lessee.
Based on the foregoing evidence, Appellant contends its eviction was improvidently ordered by the District Court for these reasons: (1) Carl Dengel, negotiating on behalf of all the Dingeldeins, entered into a contract of verbal lease with Defendant that would not expire until 1970, thus the notice to vacate was a breach of the oral contract of lease; (2) when the notice to vacate was issued Four Seasons, Inc. was not the lessee of the owner, but the heirs of Karl Dingeldein were; thus the corporation was not sublessor and had no capacity to issue a notice to vacate to Defendant; (3) the sale of the silversmith business for $20,000.00 had for part of its consideration the promise that the buyers would retain possession of the store location, thus the vendors of the business were estopped from attempting to evict their vendees in less than two years after the sale; and (4), by accepting the rent check tendered for October, 1968, the sublessor vitiated its notice to vacate, assuming for the purpose of this contention that the notice was properly issued.
We will first consider Defendant’s first contention that it occupied the premises under a verbal contract of lease. It is not disputed that Carl Dengel, who is an .attorney, negotiated the sale of the silversmith business for all the Dingeldeins. According to Leaman, the Defendant was promised continued occupancy beyond September 30, 1968, if Dengel copld get a new lease from the owner. Leaman said occupancy was guaranteed for the duration of the new lease, should it be obtained, for a fixed price. Dengel denies this. It is his recollection that the silversmith sublessee was guaranteed occupancy through September 30, 1968.
Whether or not a verbal lease was agreed to between Dengel and Leaman is a question of fact. If Dengel’s testimony is accepted, there was no lease, and vice versa. The Trial Judge, who saw and observed the witnesses, reached the conclusion that there was no lease. We can find no error in the District Judge giving more credence to Dengel’s version of the negotiations concerning future occupancy; hence, we must agree that no verbal contract of lease was entered into.
Appellant next contends that Four Seasons, Inc. w.as not the lessee at the time the notice to vacate was issued. It should be observed at this point that the tenant in the silversmith shop occupied the premises with the knowledge that its sublessor was not authorized to sublease this property. For more than one year before the notice to vacate was issued, Defendant made its rent checks payable to “Four Seasons, Inc.”. This corporation is owned exclusively by the heirs of Karl Dingeldein. Having dealt *689 both with the Dingeldeins, individually, and the corporation as its landlord under a questionable lease agreement, insofar as the owner failed to consent, we find no merit in Defendant’s contention that the notice was issued by a party other than the landlord.
Defendant next contends that, when it bought the silversmith business, it bought, among other things, the right to sublease from the Dingeldeins for as long as they could lease the property from the owner. We are not convinced of this from the evidence. The original agreement between the Dingeldeins and Hans Leutkemeier concerning management of the silversmith business with an option to purchase it was very detailed. It was drafted by Luetkemeier’s attorney. It stated occupancy was guaranteed until January, 1968. Because other conditions of purchase were clearly spelled out in the option, we do not think Leaman’s testimony is enough to warrant our concluding Dengel guaranteed .a verbal lease beyond October, 1968, when he himself denies this fact.
Finally, Defendant contends that, in accepting a check tendered for rental in October, 1968, the notice to vacate issued on September 10, 1968 was vitiated. There is merit in this contention. If a landlord accepts rental tendered by his tenant after the notice to vacate is issued and for a period beyond the time the notice indicated the lease arrangement would be terminated, such acceptance vitiates the notice. See Canal Realty & Improvement Co. v. Pailet, 217 La. 376, 46 So.2d 303. Even though the check for the October rent was not negotiated by Four Seasons, Inc., nonetheless it was accepted and not returned. It was not until trial of the rule for possession that the check was tendered and that was when the landlord had been apprised the defense now under discussion would be used be used to avoid eviction.
It is true Four Seasons, Inc. has a right to rental for the occupancy during the time the tenant stays against its landlord’s wishes while the rule for possession is in litigation. But in accepting the October rent, the landlord inadvertently negated the notice to vacate.
Accordingly, the judgment of the Trial Court ordering New Orleans Silversmiths, Inc. to vacate the premises at SOS Royal Street is annulled and set aside. Plaintiff is to pay all costs of these proceedings.
Judgment annulled.