251 So.2d 444 (1971)
Willie MAJOR
v.
Marvin E. HALL et ux.
No. 8466.
Court of Appeal of Louisiana, First Circuit.
June 30, 1971.
Rehearing Denied September 2, 1971.
Writ Granted October 21, 1971.
*445 Johnnie A. Jones, Baton Rouge, for appellant.
G. Emitte Core, Core & Mills, Baton Rouge, for appellee.
Before LANDRY, ELLIS and BLANCHE, JJ.
BLANCHE, Judge.
Plaintiff, Willie Major, has brought this devolutive appeal from a judgment in favor of defendants, Marvin E. Hall and Estelle A. Hall, dismissing the rule nisi taken by plaintiff to have defendants show cause why they should not be enjoined from disturbing plaintiff's use of certain premises on which plaintiff claims to have a valid and binding lease.
On March 12, 1969, defendants, who were owners in community of a certain parcel of land and an automobile service station located thereon, leased the premises to plaintiff for ten years at a monthly rental of $190. Three provisions of the lease are pertinent to this litigation:
"Lessee may not sublet all or any part of the premises without the written consent of Lessors * * *.
"* * * Lessors agree not to exercise any landlord's remedies against Lessee by reason of any default unless and until Lessor shall have given to Lessee written notice by registered mail of the default and unless Lessee shall have failed to remedy such default within a period of thirty (30) days from the giving of such notice.
"No waiver by either party * * * of any breach of any of the covenants or conditions herein contained to be performed by the other party, shall be construed as a waiver of any succeeding breach of the same or any other covenant or condition." (Agreement of Lease, Record, p. 11)
For fifteen years before his lease with defendants, plaintiff operated on these premises a service station, called "Willie Major's Esso Service," under a lease with the Humble Oil and Refining Company. Sometime during this period, plaintiff made an agreement with his on-and-off employee, Cleon Knighten, whereby Knighten would operate the service station and pay plaintiff a fixed monthly sum. Plaintiff intended that Knighten run the service station until his son finished college and took over the business. After March 12, 1969, the effective date of the lease with *446 defendants Knighten continued to operate the service station; he collected the revenues, bought the gasoline, paid the bills, and made monthly payments of $285 to plaintiff. During this period plaintiff did not operate the business, leaving the management to Knighten and making only infrequent visits to the station. Plaintiff received the monthly payments from Knighten and paid the $190 rentals to defendants; he also kept a key to the premises. In March, 1969, plaintiff purchased $7,036.20 worth of accessories (tires, tubes, and batteries) from Humble; the accessories were subsequently sold at the service station, some by the plaintiff and some by Knighten; plaintiff paid for the accessories and was obligated to Humble for them.
Learning of the agreement with Knighten and considering it to violate the nosubletting-without-consent clause of the lease, defendant (Marvin E. Hall) sent a registered letter to plaintiff putting him in default because of the alleged subletting, and notifying him that the lease would be terminated unless the default was cured within thirty days. Defendant sent the letter to plaintiff's mailbox, but plaintiff did not pick up the letter, and it was returned to defendant. Defendant did not attempt to redeliver the letter at that time. For the next ten months, defendants did not otherwise attempt to inform plaintiff of the alleged default or of their intention to terminate the lease, although defendants regularly received the monthly rental payments from plaintiff, often in person from plaintiff at his other place of business.
On April 1, 1970, defendant leased the same premises to Knighten for a monthly rental of $230. Defendant and Knighten changed the locks on the premises, thereby effectively evicting plaintiff. On April 16, 1970, defendant sent plaintiff a certified letter informing him that defendants considered plaintiff's arrangement with Knighten and his failure to make rental payments on time to be violations of the lease; the letter further put plaintiff in default and notified him to vacate the premises and to refrain from obstructing the use of the premises by Knighten, the present lessee; a copy of the unreceived letter of May 29, 1969, was enclosed. From March, 1969, to March, 1970, many of plaintiff's rental payments to defendants were late, and some of his checks were returned because of insufficient funds. Plaintiff, however, eventually made good all rental payments except the payment due on March 12, 1970, which defendant returned to plaintiff with the letter of April 16, 1970.
Plaintiff brought this suit alleging that defendants wrongfully evicted him, because the arrangement with Knighten was not a sublease or, alternatively, because defendants did not comply with the notice and grace-period provisions of the lease and therefore were not entitled to exercise their landlords' remedies, or, alternatively, because defendants did not take the proper legal steps to evict him. Defendants, on the other hand, contend that plaintiff's arrangement with Knighten was a sublease without their consent, that this violated the lease and entitled them to terminate the lease, that defendant's letters of May 29, 1969, and April 16, 1970, satisfied the notice and grace-period requirements of the lease, and that defendants were therefore entitled to terminate the lease with plaintiff and lease the premises to Knighten.
The trial court dismissed plaintiff's suit, finding that plaintiff's agreement amounted to a sublease, that defendant's letter of May 29, 1969, substantially complied with the notice requirements of the lease, that defendants were therefore privileged under the waiver clause in the lease to terminate the lease at any time thereafter, and that defendants' termination of the lease in April, 1970, was not unreasonable; the trial court further found that defendants were justified in leasing the premises to Knighten before taking legal steps to evict plaintiff, because plaintiff's repeated failure to make the monthly rental payments on time violated the lease and evidenced *447 plaintiff's inability and unwillingness to perform under the contract.
The legality of defendants' position depends upon four legal questions, each a critical step in defendants' claim that plaintiff's agreement with Knighten breached the lease and entitled them to evict the plaintiff, each requiring an answer in favor of defendants to justify the eviction: (1) Was plaintiff's agreement with Knighten a sublease and therefore a breach of the lease? (2) Did defendant's letter of May 29, 1969, fulfill the notice provisions of the lease? (3) Did defendants' inaction between May 29, 1969, and April 1, 1970, together with their acceptance of the rental payments from plaintiff, constitute a waiver of the breach in light of the waiver clause in the lease? (4) Was defendants' leasing of the premises to Knighten before taking any legal steps to evict plaintiff a legal method of eviction? Defendants' eviction would be unlawful if plaintiff's agreement with Knighten was not a sublease; or if defendant's letter of May 29, 1969, was not proper notice of default; or if defendants' conduct between May 29, 1969, and April, 1970, waived the subletting breach or the notice of default; or if defendants, by leasing the premises to Knighten, improperly exercised their landlords' remedies.
We find as follows: (1) that plaintiff's agreement with Knighten was a sublease; (2) that the letter of May 29, 1969, satisfied the notice requirements of the lease; (3) that defendants' silence and acceptance of plaintiff's rental payments from May 29, 1969, to April, 1970, constituted a waiver of plaintiff's breach and a waiver of the notice of default given in the letter of May 29, 1969; and (4) that defendants' leasing of the premises to Knighten was an unlawful method of exercising their landlords' remedies. Thus, although plaintiff's breach of the lease and defendant's letter of May 29, 1969, entitled defendants to terminate the lease and evict the plaintiff, their terminating the lease and evicting plaintiff by leasing the premises to Knighten and locking plaintiff out were unlawful for two reasons: first, defendants' inaction and acceptance of plaintiff's rental payments vitiated the effect of the letter of May 29, 1969, and made it necessary for defendants to place plaintiff in default again before exercising any landlords' remedies; and, second, the actual exercise of the landlord's remedy of eviction must be accomplished by specified legal steps, not simply by leasing the premises to someone else.
At the outset, we should point out that the letter of April 16, 1970, cannot serve to satisfy the notice requirements of the lease and thereby validate defendants' eviction of plaintiff, because the lease calls for notice of default and a thirty-day grace period before exercising any landlord's remedies, yet the eviction preceded the letter of April 16, 1970.
Deciding that plaintiff's agreement with Knighten was a sublease and not an operating or management agreement as plaintiff argues is a complicated choice,[1] for the agreement possesses the formal attributes of a sublease, yet looks like both a landlord-tenant relationship and a simple arrangement to manage a business. The codal requirements for a sublease are the same as for a lease, since a sublease is a lease between the original lessee and a third party. A lease is a contract by which one party gives to another the enjoyment of a thing for a fixed price. LSA-C.C. arts. 2669, 2674. A lease, which may be oral, LSA-C.C. art. 2683, requires an object, a certain and determinate price, and consent. *448 LSA-C.C. arts. 2670, 2671. Under the contract in question, one party (plaintiff) granted to another (Knighten) the enjoyment of a thing (service station) for a fixed price ($285 a month); thus, the agreement obviously fulfills the codal requirements of a lease.
What complicates our finding of a sublease, however, is the intent of the parties concerning the character of their agreement and their ambiguous handling of the business pursuant thereto. Plaintiff testified that he did not intend to sublet the service station, that Knighten was to act only as plaintiff's manager, not as his sublessee. But the legal character of a contract must be determined by its substance, by its effect on the parties, what the law not the partiessays it is; so the parties' intent is not conclusive. To support his argument that he remained the owner and operator of the service station, plaintiff points out that he made several visits to the service station to check up on the business, that he kept a key to the premises, and that he bought, became obligated for, paid for, and partially sold certain accessories at the service station. Though these acts may imply that plaintiff was still the owner-operator of the business, they are not inconsistent with a landlord-tenant relationship. Infrequent visits to the premises and retention of a key are not uncommon for a lessor. Active participation in the retailing of merchandise on the premises does not negate a subletting of the premises, since this activity was incidental to the main business and formed only a part of the overall business.
On the other hand, several facts tend to show that plaintiff effectively got out of the service station business, turning over complete control to Knighten. While Knighten's income depended entirely on the success or failure of the business, plaintiff's income was fixed, dependent only upon Knighten's ability to pay, and not directly tied to the fortunes of the business. Plaintiff did not, in fact, exercise any control over the business; Knighten performed all managerial functions with complete discretion. In short, plaintiff gave the complete control of and the current ownership interest in the service station to Knighten in exchange for a fixed monthly rental. The substance of this arrangement convinces us that there was a subletting of the station rather than an operating or management agreement.[2]
A resort to common sense supports a finding that defendants satisfied the notice-of-default provision in the lease. By sending the registered letter to plaintiff's mailbox, defendants complied literally with the notification requirement. Plaintiff has not attempted to explain why he did not receive the letter. The testimony, as well as the most plausible explanation, indicates that plaintiff simply declined to accept the letter. Plaintiff's refusal to accept the letter could not vitiate an otherwise effective notice of default, especially when the lease requires that notice be sent by registered letter.
Regarding our next question, the trial court held that the waiver clause in the lease entitled defendants to evict plaintiff at any time after June 29, 1969 (thirty days after the notice-of-default letter of May 29, 1969), and that the eviction nine months later was not unreasonable. We *449 think the trial court's error lies in its failure to distinguish between a waiver of the breach itself and a waiver of the notice of default. The most sensible meaning of the waiver clause is that a waiver of one breach does not constitute a waiver of any subsequent breach, including a continuation of the waived breach. But the waiver clause refers only to breaches; it does not mention notices of default (or grace periods for that matter). Thus, although the waiver clause permits defendants to exercise their landlords' remedies for a continuing breach that they have previously waived, the waiver clause has no such effect on the notice-of-default requirement.
After plaintiff's subletting-without-consent breach, after defendant's letter of May 29, 1969, notifying plaintiff of the default, and after the thirty-day grace period, defendants could lawfully evict plaintiff. But by not attempting for nine months to inform the plaintiff of their continuing intention to terminate the lease and evict him, despite the face-to-face transactions between plaintiff and defendants, and by accepting at least nine monthly rental payments during this period, defendants waived not only the breach complained of in the letter of May 29, 1969, but also the notice of default in the letter. The Louisiana jurisprudence is clear and well established that a lessor's acceptance of rental payments after the notice of default and the grace period constitutes a waiver of the breach and notification thereof. Canal Realty and Improvement Company v. Pailet, 217 La. 376, 46 So.2d 303 (1950). (Lessor's acceptance of one rental payment twenty-one days after the notice of default and eleven days after the grace period constituted both a waiver of all previous breaches, thus reinstating the lease, and a waiver of the notice, thus vitiating the effect of the notice.) See also, Four Seasons, Inc. v. New Orleans Silversmiths, Inc., 223 So.2d 686, 689 (La. App.4th Cir. 1969). On April 1, 1970, plaintiff's continuing breach of the lease gave defendants the right to evict plaintiff, provided the notification and grace-period requirements were satisfied, since these requirements were conditions precedent to the exercise of this right. But the notice of default given in the letter of May 29, 1969, had been waived, and the waiver clause in the lease did not perpetuate its effect. Therefore, defendants were not entitled on April 1, 1970, to exercise their right to evict plaintiff.
The justice of this result is compelling. Plaintiff had not received actual notice of the default, and, according to his testimony, was unaware of defendants' intention to terminate the lease. Consequently, his eviction on April 1, 1970, not only came as a surprise, but it also deprived him of any opportunity to remedy the breach. Moreover, even had plaintiff known of defendants' intention, their acquiescence for nine months in the breach might certainly have convinced him that they did not intend to take advantage of their remedies, thereby lulling him into a false sense of security with reference to his prohibited arrangement with Knighten.
Lastly, we conclude that defendants' method of evicting plaintiff was an improper procedure for evicting a lessee. The statutory procedures for evicting a lessee are elaborate and are contained under Title XI of the Code of Civil Procedure, "Eviction of Tenants and Occupants." Obviously, defendants, by simply leasing the premises to Knighten and locking plaintiff out, complied with none of these statutory procedures. It is well established in this state that a lessor has no right to evict his lessee without resorting to the statutory means of eviction. Louisiana Materials Company v. Cronvich, 236 So.2d 510, 517 (La.App.4th Cir. 1970); Rivers v. Tessitore, 165 So.2d 888, 890 (La.App.4th Cir. 1964); Mena v. Barnard, 113 So.2d 332, 333 (La.App.2nd Cir. 1959).
*450 In justification of their failure to follow the statutory provisions relating to eviction of a lessee, defendants argue and the trial court held that Sirianos v. Hill, Harris and Company, 224 La. 60, 68 So.2d 757 (1953), authorizes such extrajudicial eviction procedures when the lessee has repeatedly failed to pay his rent when due and evidences an inability and unwillingness to perform his obligations under the lease. However, Sirianos is factually inapposite. There plaintiff filed a damage suit against the defendants claiming that the defendants breached the lease by renting to another before taking any legal steps to eject the plaintiff. In dismissing plaintiff's suit, the Court found that the plaintiff was both unable and unwilling to carry out his agreements under the lease and stated:
"* * * To allow him to recover under such conditions on the claim that the lessors, following plaintiff's own failure to comply with the contract, had breached their contract by entering into a lease with another, would be unconscionable. The plaintiff has lost nothing, and is in no position to complain. * * *" (Sirianos v. Hill, Harris and Company, 68 So.2d 757, 759)
Plaintiff has claimed damages resulting from his unlawful eviction, however, at trial he failed to introduce any evidence whatsoever concerning damages of financial losses. Plaintiff has the burden of proving damages, and, failing to do so, he cannot recover.
For the above and foregoing reasons, the judgment of the trial court is reversed, and there will be judgment restoring plaintiff to the peaceful possession of the leased premises and making the rule filed by plaintiff absolute. All costs are to be paid by appellees.
Reversed and rendered.
NOTES
[1] We could have sidestepped this choice, since our decision rests upon defendants' waiver-of-default notice and improper eviction of plaintiff. However, since plaintiff will be restored to the leased premises under our decision, this issue will be decided should the defendants elect to exercise their landlords' remedies against plaintiff after complying with the notice and grace-period requirements of the lease.
[2] In arguing the contrary, plaintiff cites Haeuser v. Schiro, 235 La. 909, 106 So. 2d 306 (1958), where the Supreme Court held (on rehearing) that a lessee in setting up a family corporation to use the leased premises for the same purposes specified in the lease did not create a sublease in violation of the lease agreement. Haeuser, however, was concerned with identity of the operator of the business; since the original lessee owned the new corporation almost entirely, there was no real change in the identity of the person using the leased premises, and, thus, there was no sublessee and no sublease. In the case here, there was a complete change in the identity of the operator of the business, and our concern is with the character of the agreement, not the identity of the operator of the business.