299 So.2d 418 (1974)
WEST END LANDING, INC.
v.
The BOARD OF LEVEE COMMISSIONERS OF the ORLEANS LEVEE DISTRICT.
No. 6141.
Court of Appeal of Louisiana, Fourth Circuit.
August 1, 1974.
*419 Richard J. McGinity of McGinity & Wootan, New Orleans, for The Board of Levee Commissioners of the Orleans Levee District.
R. King Milling, Charles D. Marshall, Jr., New Orleans, for West End Landing, Inc.; Milling, Benson, Woodward, Hillyer & Pierson, New Orleans, of counsel.
Before BOUTALL and MORIAL, JJ., and BOURG, J. Pro Tem.
BOUTALL, Judge.
This is a suit by a lessee against the lessor seeking a declaratory judgment decreeing that a certain lease, with amendments thereto, between the parties is still in full force and effect. The trial court so declared and the defendant-lessor has appealed.
West End Landing, Inc. and The Board of Levee Commissioners of The Orleans Levee District entered into a lease dated January 21, 1970 under which the Board leased to West End a tract bordering on the New Basin Canal in New Orleans for a period of twenty years with renewal options. The purpose of the lease was to benefit and promote private pleasure boat interests, including the construction and maintenance of boat slips, mooring and repairing of boats, sale of petroleum products, and other services relating to the boating industry. By a lease amendment dated December 28, 1970, the Board leased three additional sites to West End contiguous to the originally leased site. Basically, the lease and amendments required West End Landing to remove the existing structures in the area, clear the land and the bed of the canal, and prepare the area for a marina or boat harbor together with services for boats.
The record discloses that during the period of time from the beginning of the lease, West End Landing did very little towards accomplishing these requirements in the lease. In fact, its main efforts seemed to be towards using the area as a storage facility for heavy equipment and earth moving equipment. The defendant Board recognized that lessee was not proceeding timely, and did everything within its authority to enable West End to expeditiously embark upon its required project of ground clearing and marina construction but to little avail. The Board then insisted that the lessee either begin performance or forfeit the lease, and accordingly on May 8, 1972, the parties reached agreement on a program setting out the specific items of improvement to be accomplished by the lessee and a time schedule was set in accordance therewith. This agreement approved a schematic drawing detailing the general arrangement of the development of the water area at the south end of the New Basin Canal and provided that working drawings specifically describing the improvements to be made had to be submitted to the Chief Engineer of the Orleans Levee Board for his approval on or before September 1, 1972 and that the work contemplated by the drawings shall begin no later than October 2, 1972 and vigorously pursued thereafter. *420 Additionally it was required that on or before October 2, 1972 the lessee had to commence the operation of restoration or demolition of the present building on the site, the removal of all stored equipment and material not related to the uses set forth in the lease, and the installation of parking in the balance of the land areas relative to these permitted uses.
The record shows that the working drawings required were submitted to the Levee Board before September 1, 1972. However, the approval was not forthcoming within five days but instead the plans were approved on September 11, 1972 and received by the plaintiff on September 12, 1972. As to the rest of the requirements, there was the removal of some of the equipment specified, and very little else. The trial judge found that the performance of the lessee was at best borderline, and the record substantiates this finding. The lessee was not in substantial compliance with his performance required under the lease on October 2, 1972.
At this point we note the provisions of the lease contained in paragraph 11 relative to failure to comply with the lease provisions:

"11
"It is particularly agreed and understood that if Lessee shall fail to comply with any of the provisions or conditions of this Lease or fail to pay his rent promptly when due, Lessor shall have the right and option to cancel this lease upon giving Lessee notice in writing, addressed to him at his last known post office address, setting forth the cause for which said lease is to be cancelled or terminated, and Lessee shall have twenty (20) days from the date said notice is mailed to remedy the condition set forth in said notice and failure to remedy said condition shall cause said lease to terminate, reserving unto Lessor all rights against Lessee for his breach of this contract."
On October 3, 1972, the Levee Board informed lessee by letter that in view of its failure to start construction by October 2, 1972 it was the intent of the Board to cancel the lease in accordance with the provisions of the basic lease and the amendments thereto. Believing that it had 20 days from the notice to comply, several days later, on October 10th, West End attempted to fill and grade a portion of the leased property in the proposed parking area, but was stopped by the Board's employees who threatened to arrest anyone attempting to do the work.
After West End was stopped in that work, its president sought the services of a mutual friend as an intermediary between himself and the Board President in order to permit the work to continue and to secure an extension from the Board for other work, such as driving of piles, etc., which was delayed due to reasons beyond his control. As a result of this maneuver, he was informed that the extension of the lease period would be granted. Shortly thereafter, on October 20, 1972, West End was billed for the next three months rent (November, December and January) and paid this amount by check. However, the Board of Commissioners took action on November 15, 1972, declared the lease cancelled and terminated for lack of compliance by the lessee, ordered the return of the rent paid, and notified lessee to vacate the premises.
There is a dispute between the parties both as to the facts and the legal effects of the Board President agreeing to extend the compliance deadline after October 2, 1972 and the acceptance of the rent thereafter. This dispute forms the determinative issue in this case.
An examination of the record convinces us that on the date of October 2, 1972, the lessee was not performing his obligations in compliance with the lease and the amendments thereto. We are similarly convinced that a consideration of the lease and the amendments thereto required by its terms a written notice of noncompliance be *421 addressed to lessee affording him 20 days within which to comply. The letter of October 3, 1972 fulfilled this requirement of notice setting forth the cause for termination and notice of intent to terminate in accordance with the lease. The lessee then began to comply, and his initial attempts at compliance was met with the prevention of compliance by the Board police employees. The record indicates that perhaps the lessee could not comply with the other requirements even though no interference might have occurred. However, this question is rendered moot by the conferences that arose after the work stoppage occurred and which led to the disputed agreement.
It is the contention of the appellant Board that the lessee was only granted a provisional extension of time of compliance from October 2 to November 14, with the intent being that if lessee diligently prosecuted his work, the Board meeting on November 15th would serve as a vehicle to set aside the intention to cancel evidenced by the letter of October 3. Because of assurances of compliance by lessee, it was decided that the lessee would be billed for the subsequent rent payments only on this conditional basis, that is, demonstration of compliance by November 14. As opposed to this the lessee contends that he was granted an indefinite extension of the October 2 compliance date because he was having difficulty with suppliers of labor and material necessary to compliance, and he believed that some sort of schedule could be worked out again as was previously done. Which of these two positions is correct, we find it unnecessary to determine. What is undisputed is that the effect of the notice of October 3rd was set aside by this activity, and an unconditional billing for the rental period beyond the proposed termination date was made by the lessor and accepted by the lessee, who paid the advance rent.
In the case of Major v. Hall, 251 So.2d 444 (La.App. 1st Cir. 1971) partially reversed on other grounds, 262 La. 243, 263 So.2d 22 (1972), the court stated as follows:
"The Louisiana jurisprudence is clear and well established that a lessor's acceptance of rental payments after the notice of default and the grace period constitutes a waiver of the breach and notification thereof. Canal Realty and Improvement Company v. Pailet, 217 La. 376,46 So.2d 303 (1950)."
Similarly, relying on the cited Canal Realty case, this court has held in the case of Four Seasons, Inc. v. New Orleans Silversmiths, Inc., 223 So.2d 686 (La.App. 4th Cir. 1969) that the acceptance of rental tendered after notice to vacate vitiated such a notice and maintained the tenant in possession.
In the present case, the notice of termination was dated October 3, and the 20 days would expire on October 23rd. The invoice for the future rental of November, December and January was dated October 20, the check issued in payment of the rent was dated October 24th, and it was cashed on October 26th. It was not until after the November 15th resolution of cancellation was adopted, that the Board made an effort to return the future rentals. Under these circumstances, we are of the opinion that the lessor waived the failure to comply by October 2 and vitiated the effect of the notice of October 3. Thereafter it became necessary to send a new notice of violation of noncompliance as required by the lease, granting 20 days to comply. We are in sympathy with the efforts of the Board to furnish the public some badly needed services and recognize that it took the steps that it did only after it had exhausted every reasonable means of achieving the original purpose of the lease. However, before it can terminate the lease, the Board must issue the notice as called for in the lease.
For the foregoing reasons we agree with the decree of the trial court that the lease agreement between the parties is still *422 in full force and effect. However in its judgment the trial court granted West End Landing, Inc. thirty days from the date the judgment became final to commence operations as called for in the lease and to vigorously pursue those operations to completion thereafter. Inasmuch as there appears to be a difference of opinion amongst the parties as to whether the operations called for in the lease mean actual physical work upon the premises or merely preparation for such work, we hold that the operations require actual physical work upon the premises. With this interpretation in mind, we see no valid objection to the 30 day period proposed by the court.
Accordingly, the judgment appealed from is affirmed. The cost of this appeal is to be borne by appellant.
Affirmed.