SARTAIN, Judge.
This is an appeal from a summary proceeding for eviction based on untimely payment of rent. The trial court rendered judgment in favor of the lessee, V-6 Company, Inc. Petitioners-lessors appeal.
V-6 Company, Inc. operates a restaurant in premises it leases from petitioners. The written lease, entered into on July 20, 1973, fixes the monthly rent for the ten year term at $1,083.33, due on or before the first day of each month. The lease also provides for an additional sum based on a percentage of the restaurant’s gross sales for the year which becomes due each year on May 31.
Both parties admit that from the beginning payments under the lease have not been timely. However, there is no evidence that petitioners ever protested the late payments until September, 1977. In that month, because none of the percentage rent due for the first three years of the lease had been paid, Sizeler Realty Company, lessors’ managing agent, agreed to accept a promissory note for the amount ($8287.80), which note would be paid in monthly installments of $259.75, due on the first of each month. During the negotiations preceding the execution of the note, Sizeler Realty Company wrote two letters to V-6 Company in which it stated that monthly rental payments would henceforth have to be remitted timely. The note also included a provision accelerating the installments upon a default by V-6 Company under the lease.
Despite such warnings, rental payments and note payments continued to be made and accepted without protest from one to two months beyond their due dates. A letter written by Sizeler Realty on May 31, 1978, stated that as of June 1, V-6 Company would be six months behind in its note payments and three months behind in its monthly rent. On July 27, 1978, Sizeler Realty informed V-6 Company by letter that it owed $3563.61 in annual percentage rent and that as of August 1 it would owe three months’ rent and two note payments. In this letter, lessee was reminded of the necessity of paying timely to avoid the acceleration of the note.
Cancellation of the lease and suit for delinquent payments was threatened for the first time in a letter from Sizeler Realty dated August 31,1978, and received by V-6 Company on September 1. This letter demanded payment in full by September 5 of the annual percentage rent and the rent for August and September. It also informed lessee that it was accelerating the balance due on the promissory note and made demand for that sum ($6397.46 plus accrued interest of $85.30).
Two checks covering the August rent and note payments were mailed on September 5, but were returned on September 7 with the explanation that the amount was insufficient to comply with the August 31 demand to make the account current. On September 12, five checks, covering the full amount owed except the accelerated balance on the note, were sent to Sizeler Realty. For reasons which are disputed by the *647 parties, the five checks were not deposited for collection. Instead they were returned to V-6 Company on September 18.
On September 19, 1978, V-6 Company received three letters from the attorney representing Sizeler Realty and the lessors. Two of these letters demanded payment by September 25 of all amounts owed, including attorney’s fees as provided for in the note and the lease, and stated that suit would be filed if the money was not forthcoming. The sum demanded included the rent due for the month of September. The third letter informed lessee that the lease was being cancelled for failure to timely pay the rent and gave notice that lessee had five days to vacate the premises.
The following day, September 20, V-6 Company delivered to lessors’ attorney a cashiers check covering all amounts owed, including the rent for the month of September. This payment was accepted and lessors acknowledge that the account was made current through September 30. A check covering the rent for October was sent on September 26. However, this check was returned October 4 with the explanation that due to previous defaults the lease was terminated as of September 30. Suit for eviction was filed October 5.
Lessee defended the suit with two principal arguments. First, it maintained that the repeated acquiescence and indulgence on the part of lessors in accepting late payments without protest waived lessors’ right to strictly enforce the lease provision for timely payment. Second, lessee argued that lessors’ acceptance of rent payments after giving notice to vacate vitiated the eviction notice and had the effect of forgiving all previous defaults.
The trial court addressed lessee’s first argument and agreed that because of the pattern of accepting late payment without opposition, the lease could not be cancelled for failure to pay timely. The judge a quo determined that under the circumstances lessors had not given lessee sufficient notice of their intention to depart from past custom and begin strictly enforcing prompt payment. The jurisprudence reviewed in Himbola Manor Apartments v. Allen, 315 So.2d 790 (La.App. 3d Cir. 1975), was cited in support of this decision.
We affirm the trial court’s judgment but do so for different reasons. We prefer to base our decision on lessee’s second argument. For purposes of this discussion, we will assume arguendo that lessors had the right on September 18 to cancel the lease for non-payment of rent. We hold that lessors’ acceptance on September 20 of the rent covering the period through September 30 had the effect of vitiating the September 19 notice to vacate and waived lessee’s default. We thus conclude that the lease agreement between the parties is still in full force and effect and that the petition for eviction was properly dismissed.
Notice to a lessee appraising him of the cancellation of the lease and giving him five days to vacate the premises is a statutory prerequisite to a suit for eviction. C.C.P. art. 4701; Lichtentag v. Burns, 258 So.2d 211 (La.App. 4th Cir. 1972). The letter lessee received on September 19 giving it to September 26 to vacate fully complied with this requirement. However, the effect of the notice and the default were cancelled by lessors’ subsequent action.
It is well established in Louisiana jurisprudence that a lessors’ acceptance of rental payments after the notice to vacate is issued vitiates the notice and forgives the default. In Canal Realty & Improvement Co. v. Pailet, 217 La. 376, 46 So.2d 303 (1950), the Supreme Court held that a May 19 notice ordering lessee to vacate by May 31 was waived and the default was forgiven when lessor accepted the June rent. This rule has more recently been discussed in Arms v. Rodriguez, 232 La. 951, 95 So.2d 616 (1957); Murphy Oil Corp. v. Gonzales, 316 So.2d 175 (La.App. 4th Cir. 1975); West End Landing, Inc. v. Board of Levee Com’rs, 299 So.2d 418 (La.App. 4th Cir. 1974); Major v. Hall, 251 So.2d 444 (La. App. 1st Cir. 1971), partially reversed on other grounds 262 La. 243, 263 So.2d 22 (1972); Landis v. Smith, 22.1 So.2d 190 (La. App. 2d Cir. 1969); Four Seasons, Inc. v. *648 New Orleans Silversmiths, Inc., 223 So.2d 686 (La.App. 4th Cir. 1969). Cf. Lieux v. Dillard, 273 So.2d 880 (La.App. 1st Cir. 1973).
Clearly, lessors by accepting rent for the period through September 30 vitiated the earlier notice to vacate by September 26 and waived lessee’s default. At the time of lessors’ October 4 letter, which returned the promptly tendered October rent and informed lessee that the lease was cancelled as of September 30, there was no breach which could be the basis for cancellation.
For the foregoing reasons, we affirm at appellants’ cost.
AFFIRMED.