375 So.2d 400 (1979)
State of Louisiana[1] Jose C. FLORES, Plaintiff-Appellee,
v.
The GONDOLIER, LTD., Defendant-Appellant.
No. 7090.
Court of Appeal of Louisiana, Third Circuit.
August 23, 1979.
Rehearing Denied October 12, 1979.
*401 Allen R. Ingram, Lafayette, for defendant-appellant.
Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Douglas W. Truxillo, Lafayette, for plaintiff-appellee.
Before CULPEPPER, WATSON and FORET, JJ.
WATSON, Judge.
This is a rule proceeding brought by the plaintiff-lessor, Jose C. Flores, to evict the defendant-lessee, The Gondolier, Ltd. The trial court ordered that the rule be made absolute and that defendant vacate the premises known as The Gondolier, d/b/a Steve's Place, located at 4513 Johnston Street, Lafayette, Louisiana. The trial court also ordered that the "Lease and Purchase Option" (TR. 14) be cancelled. The defendant corporation has appealed.
Defendant had reconvened for damages resulting from the alleged failure of the owner to repair the premises. However, an exception of improper use of summary proceedings was sustained by the trial court. The reconventional demand was dismissed without prejudice and is not at issue in the appeal.
The original parties to the lease and option were the owner of the property, Wallace G. Doucet, and Gondolier, Ltd. through its president, Curtis H. Roy. Approximately a year after the lease was confected, on August 19, 1977, Wallace Doucet sold the leased premises to plaintiff Flores. In the interim, on February 10, 1977, the Gondolier Corporation was sold by Roy to Stephen J. Gennuso.
The lease provides a monthly rental of $1,500 and states that any ". . . indulgences or extensions . . ." (TR. 15) shall not waive the lessor's right to prompt payment on the first of each month. An acceleration clause provides that a default in three rental payments gives the lessor an option to demand either the entire balance for the term of lease or cancellation. After its execution and recordation on August 27, 1976, the lease had a primary term of one year beginning on October first. It was renewed for an additional five years. During this secondary term, the lease gives the lessee an option to purchase the property for $190,000.
Flores testified that the rental payments were late from the first month he owned the property, September of 1977; that he repeatedly protested the late payments and demanded that the rent be paid timely. This was disputed by Gennuso, who testified that he and Flores had orally agreed to payment on the tenth of each month. The trial court resolved this issue of fact against Gennuso and concluded that: ". . . Flores did not acquiesce in late payment." *402 (TR. 123). Because of this and Gennuso's failure to pay the December, 1978, rental, the trial court found a breach of the lease.
The sequence of events was as follows:
The checks for 1977 are dated September 12, October 10, November 9 and December 12. The checks for the first five months of 1978 are dated on or before the tenth. Thereafter, the dates are June 12, July 15, August 29, September 29 and October 27. With a letter to Gennuso's attorney dated October 30, Flores returned this October check; advised that it had been due October first; protested the other late payments; and threatened suit to terminate the lease. This letter stated that it was an answer to one from the attorney in regard to repair of the leased premises. The October rent was subsequently paid on November 9.
By a registered letter dated November 24, 1978, and delivered on November 27, lessor Flores gave the lessee notice to vacate the premises for nonpayment of the rent. Subsequently the November rent check, dated the twenty ninth, was received by Flores and negotiated. The rule to evict was filed December 15, 1978, and served on the lessee on December 19.
The attorney for Gennuso and The Gondolier wrote Flores a letter dated December 19, 1978, informing the lessor that he was holding the December rent payment in escrow pending necessary repairs to the building. A letter from Flores to Gennuso dated December 20, 1978, pointed out that the rent was delinquent and complained about the payments being consistently late. The December rent was admittedly never paid.
Ronald Tridico, formerly manager of The Gondolier Restaurant, testified that water came in the building through the roof and also leaked in on the floor. This condition existed until his departure in February of 1978. His testimony was corroborated by Edith Senegal, a cook at the restaurant until December, 1978, who said she had to wade into the kitchen after each rain.
Flores admitted that, because the building is constructed at ground level, the same height as the adjoining parking lot, it does have some water seepage. Flores agreed to ameliorate this condition by installing a subfloor, but his testimony was that Gennuso rejected this form of repair because of interruption to his business. Gennuso's testimony was that water under the subfloor would have been a health hazard and that was his reason for the rejection.
Gennuso's personal attorney, Clement Story, testified that Flores was unhappy about the existence of the lease when he purchased the property; that Story had observed water standing on the floor of the restaurant near the kitchen; that Gennuso talked to Story in November of 1978 about exercising the option to purchase and a letter to that effect was sent to Flores in early January of 1979.
Flores testified that he purchased the property without knowing the provisions of the lease and was unaware at the time that the lessee had an option to purchase the property.
As of trial, on January 15, 1979, Gennuso had not started any repairs to the building although he said his business was closed for that purpose. After trial of the rule on the fifteenth, the matter was taken under advisement. Judgment was rendered on January 18 and signed on January 22.
Although the question was apparently not raised in the trial court, by exception or otherwise, the defendant-lessee contends on appeal that acceptance of the November rent payment after the notice to vacate bars the lessor from using summary eviction procedure.
A lessor who desires to obtain possession of leased premises must give the lessee written notice and allow five days after its delivery for the lessee to vacate the premises. LSA-C.C.P. art. 4702. Such a notice is a prerequisite to the use of summary eviction procedure. LSA-C.C.P. art. 4731. By his letter, dated November 24 and delivered November 27, Flores advised Gennuso to vacate the premises within five days because of nonpayment of the rent. The November rental was, at that time, in arrears. Subsequently, Flores accepted *403 payment of the November rental. At that time, the December rent was not due and the notice to vacate no longer had a basis. A reason for eviction and proper notice are essential requirements for a lessee to have due process of law. See Louisiana State Museum v. Mayberry, 348 So.2d 1274 (La. App. 4 Cir. 1977); Arms v. Rodriguez, 232 La. 951, 95 So.2d 616 (1957). When a rental payment is accepted after notice to vacate has been given, the notice is vitiated and the tenant's possession is maintained. The right to summary eviction is not then available to the lessor. Murphy Oil Corporation v. Gonzales, 316 So.2d 175 (La.App. 4 Cir. 1975), writ refused, La., 320 So.2d 558; West End Landing, Inc. v. Board of Levee Com'rs, 299 So.2d 418 (La.App. 4 Cir. 1974); Canal Realty & Improvement Co. v. Pailet, 217 La. 376, 46 So.2d 303 (1950); Four Seasons, Inc. v. New Orleans Silversmiths, Inc., 223 So.2d 686 (La.App. 4 Cir. 1969). There is, however, some question whether the defense of improper use of summary procedure has been properly raised in this court. See Murphy Oil Corporation v. Gonzales, supra, and Mantia v. Jazz City, Inc., 364 So.2d 272 (La.App. 4 Cir. 1978), writ denied, La., 364 So.2d 1039.
The judgment of eviction was not rendered "immediately" at the trial of the rule as required by LSA-C.C.P. art. 4732.[2] In such a case, it has been held that there is no valid judgment of eviction. Herman v. Style Line Greetings, Inc., 289 So.2d 876 (La.App. 4 Cir. 1974). However, in a similar case, Baldo v. Thibodaux, 324 So.2d 457 (La.App. 4 Cir. 1975), writ not considered, La., 326 So.2d 503, the Supreme Court has declared the judgment "apparently incorrect", 328 So.2d 888. It is not clear in Baldo whether the decision itself or only the signing was delayed. The latter was the situation in Housing Auth. of City of Lake Charles v. Minor, 355 So.2d 270 (La.App. 3 Cir. 1977), which disagrees with Herman, but can be distinguished because only the signing of the judgment was delayed. In Minor, the judgment was rendered immediately. The issue in Minor was not the validity of the judgment but whether the appeal was timely.
The decision on the merits in Minor, supra, reported at 355 So.2d 271, points out that the right to dissolve a lease is subject to judicial control. Where the term of a lease has not expired, cancellation of the lease and forfeiture of a lessee's rights are justified only when the right to that relief is clear. Considering the totality of the circumstances here and the lack of adherence to the requirements for summary procedure, the judgment of the trial court will be annulled.
For the reasons assigned, the judgment of the trial court herein is annulled and set aside. The suit of plaintiff, Jose C. Flores, is dismissed without prejudice at his cost.
ANNULLED AND SET ASIDE.
NOTES
[1] The petition was amended to show the plaintiff as Jose Flores. The State of Louisiana apparently has no connection with the matter.
[2] LSA-C.C.P. art. 4732:

"The court shall make the rule returnable not earlier than the third day after service thereof, at which time the court shall try the rule and hear any defense which is made.
If the court finds the lessor or owner entitled to the relief sought, or if the lessee or occupant fails to answer or to appear at the trial, the court shall render immediately a judgment of eviction ordering the lessee or occupant to deliver possession of the premises to the lessor or owner."