447 So.2d 80 (1984)
ADAM, INC.
v.
DIVIDEND, INC.
No. CA-1124.
Court of Appeal of Louisiana, Fourth Circuit.
March 14, 1984.
Steeg & O'Conner, Edwin O. Schlesinger, New Orleans, for plaintiff-appellant Adam, Inc.
Warren M. Simon, Jr., Metairie, for defendant-appellee Dividend, Inc.
*81 Before SCHOTT, KLEES and CIACCIO, JJ.
KLEES, Judge.
This appeal is from the dismissal of an eviction rule brought by the plaintiff, Adam, Inc. Adam sought to evict its lessee, Dividend, Inc., for non-payment of monthly rentals due under a lease agreement. The trial court found that the provision in the lease concerning written notice of default was inapplicable and that tender of payment was timely and cured any default. The plaintiff appeals these findings. The issues presented on appeal are whether the defendant was given written notice of default under the terms of the lease and whether payment within the time period for curing the default is actual payment when the check is subsequently returned "NSF" to the lessor.
The premises are located at 740 Gravier Street in New Orleans. The plaintiff is the owner of these premises having purchased them from the original lessor, Mutual Savings Life Insurance Co. in December of 1981. The original lease, of which the defendant is the assignee, was between Mutual Savings Life Insurance Co., as lessor, and 740 Gravier Corporation, as lessee. The lease was dated February 15, 1979 and subsequently assigned to Dividend, Inc. on November 19, 1979.
Dividend, Inc. operates a restaurant and bar on the premises. Rental payments were current up until March of 1982 at which time there arose a dispute as to who would pay for repairs to and replacement of the building's air conditioning system. Lessee thought that the repairs were structural in nature and therefore the costs under the terms of the lease should be borne by the lessor. The lessor however disagreed and told the lessee that it did not regard the work as structural and would not pay for the repairs done.
On April 13, 1982, Chester A. Hingle, Jr., who at the time was the lessor's local agent, wrote Dividend, Inc. advising them that their rent for April was past due and they were in default under the lease. On June 1, 1982, Dividend, Inc. tendered a rental check to the lessor which was applied to the overdue April rent. On June 2, 1982, Arnold Partesotti, who replaced Mr. Hingle, wrote Dividend, Inc. advising them that the rent for May and June was past due and demanded payment. Lessee issued and tendered another check on June 30, 1982 which was applied to the May rent. On July 31, 1982 the lessee issued and tendered to the lessor another check for the June rent. This check was deposited in the usual course of business on or about August 10, 1982. Mr. Partesotti wrote the lessee on August 5, 1982 concerning the overdue rent for the months of July and August and advised them that unless the rent was paid Adam, Inc. would begin eviction proceedings.
On or about August 17, 1982, the lessor received the lessee's check of July 31 from the bank marked "NSF". The lessee subsequently issued and tendered to the lessor a check for the June rent on September 1, 1982. The lessor refused to accept this check and a subsequent check issued on October 1, 1982 which was to cover payment of the rentals for July, August, September and October. Lessee was given notice to vacate the premises in a letter dated October 11, 1982 within 7 days from receipt of the letter. On October 13, lessee attempted to retender the October 1 check but it was again refused. Lessor then filed a Rule to Evict.
The lease between the parties contains a clause governing non-payment of rent or any other default. It says in Section 26:
In the event of failure to pay the rent hereunder, or any other default in the obligations required hereunder, which shall continue for a period of Sixty (60) days after written notice of such default, or in the event that Lessee becomes insolvent or be placed in receivership or bankruptcy proceeding, then the Lessor, at its option, may declare the amount due for the balance of the lease term immediately and entirely due and payable and may commence legal action to obtain payment of the same in full or *82 Lessor may enter into and re-enter into and take possession of the premises instituting such legal proceedings as may be required therefore, and to preserve any privilege or lien which the law might grant to them. (emphasis supplied)
Mr. Partesotti's letter of June 2 said in pertinent part,
"Please be advised that the Dividend Inc. is now past due rent for the months of May and June, 1982. This letter is notice of the past due rent for May, 1982 and June, 1982 of $7,000.00. Please forward a check to cover the above stated amount."
Section 26 refers to non-payment of the rent as a default under the lease and therefore written notice that the rent has not been paid and a demand for its payment is notice of default. We can find no authority in Louisiana requiring the use of any sacrosanct language in which a notice of default must be written.
Appellee suggests that the letter of June 2 is not notice of default, and that in order to be so considered, it should have been couched in the same terms as Mr. Partesotti's letter of August 5. That letter said in pertinent part:
"This is formal notice that the rent due on July 1 and August 1 has not been paid. Failure to pay this rent within 60 days as provided for in Paragraph 26 of the lease will result in action against you for eviction, and assertion of other rights under the lease."
We disagree with this argument and find that the letter of June 2, 1982 by Mr. Partesotti to Dividend, Inc. was sufficient to have put the lessees on notice that they were in default for non-payment of the rent.
Once the lessee was given written notice of default, it then had 60 days under the terms of the lease within which to cure the default. The lessee issued and tendered a check on June 30, 1982 to cover the May rent. This check was accepted and deposited by the lessor. Lessor made its demand for the May and June rent in the same letter, thereby giving the lessee 60 days from that written notice to cure that default. The acceptance of the June 30 check in the amount of $3,500, which was applied to the May rent, timely cured that default.
"The Louisiana jurisprudence is clear and well established that a lessor's acceptance of rental payments after the notice of default and the grace period constitutes a waiver of the breach and notification thereof." Major v. Hall, 251 So.2d 444, 449 (La.App. 1st Cir.1971). (partially reversed on other grounds, 262 La. 243, 263 So.2d 22 (1972).
By accepting a part of the rent demanded, the lessor vitiated the effect of the default and the notice. Adam, Inc. was then bound to again notify Dividend, Inc. of its overdue June rent once the May rent was accepted. While Ernst Food Mart, Inc. v. Jackson-Atlantic, 405 So.2d 1272 (La.App. 4th Cir.1981), and West End v. Board, 299 So.2d 418 (La.App. 4th Cir.1974), indicate that the acceptance of the May rent did vitiate the demand for May and June rent, even more persuasive is the language in Canal Realty & Improvement Co., Inc. v. Pailet, 217 La. 376, 46 So.2d 303 (1950), quoted in Arms v. Rodriguez, 232 La. 951, 95 So.2d 616, 618 (1957). "... that the acceptance ... constituted a waiver of that notice and a forgiveness as to any and all previously committed infractions, and it served to reinstate the lease as of that time."
This would be consistent with Smith v. Lamarque, Inc., 427 So.2d 63 (La.App. 4th Cir.1981) where we held that the lessor was obligated to give a new notice to the lessee after the lessee's checks were returned by lessor's bank as NSF.
The next notice was not written until August 5, 1982 at which time the lessor was unaware that the June rent check, issued and tendered in July, would be dishonored by the bank. The lessor here did nothing between June 2 and August 5 to serve written notice of default upon the lessee for the unpaid June rent, therefore the breach, and the notice of June 2 were waived by acceptance of the May rent. *83 The checks which the lessee attempted to tender to the lessor after August 5, 1982 were timely tendered under the terms of Section 26 of the lease.
On August 5 the lessee was given written notice of its overdue July and August rents. The lessor refused to accept the check in September for the June rent. This was error, as absent a new notice of default, the June payment tendered on September 1st should have been accepted by lessor and its non-acceptance cannot serve as a default by lessee.
The lessee attempted to tender a check on October 1, within the 60 day grace period after written notice, for July, August, September and October. The $14,000 tendered by lessee on October 1, 1982 was more than sufficient to cover the rent for the months of July and August placed in default by the letter of August 5th, and lessor had no right to reject this tender. If we assume that the August 5th notice impliedly contained notice of default of the June rent in addition to July and August, the $14,000 payment was ample to cure all defaults.
The appellant argues that once this payment was refused, the lessee should have consigned the amount by deposit into the registry of the court or some other means in order to protect itself. We disagree. The lessee had tendered payments in accord with the lease terms. These payments were improperly rejected. Lessee had no obligation to do anything further under the circumstances.
The lessee asserted as its affirmative defense LSA-C.C. 2694, the "repair and deduct" article of the Code. The lessee contends that the lessor was responsible for repairs to and replacement of parts of the air conditioning system. The lease clearly states in Sec. 13 that the lessor is responsible for any repairs, "... structural in character or which may be necessitated by fire or other casualty." There was no evidence presented at trial establishing that the repairs made were of a structural nature and we find that an air conditioning system is not an element of a building's structure. Although we disagree with the trial court's finding on this issue it does not affect the validity of the judgment on the eviction rule.
AFFIRMED.