**GENERAL ELECTRIC CREDIT CORPORATION**

v.

**SOUTHEASTERN HEALTH CARE, INC., et al.**

**Civ. A. No. 87–788–A.**

United States District Court, M.D. Louisiana.

April 2, 1990.

Richard W. Bussoff, Monroe and Lemann, New Orleans, La., for plaintiff.

Marc D. Winsberg, Randall A. Smith, Stone, Pigmann, Walther, Wittmann & Hutchinson, New Orleans, La., for defendants.

**RULING ON MOTIONS FOR SUMMARY JUDGMENT**

JOHN V. PARKER, Chief Judge.

This matter is before the court on a motion by plaintiff for a determination as

to whether the defendants are entitled to a trial by jury on any of the issues to be tried in this case, and on cross motions for summary judgment. The motions for summary judgment are opposed. The court finds there is no need for oral argument. Jurisdiction is allegedly based upon diversity of citizenship.

The material facts are undisputed. In this suit for money allegedly due to plaintiff under a lease agreement, plaintiff and Southeastern Health Care, Inc. entered into an Aircraft Lease dated November 5, 1981 for a ten year term for use of a Beechcraft airplane. Prentiss E. Smith, Jr. executed a guaranty agreement in connection with the lease. On April 7, 1987, plaintiff placed Southeastern in default for failure to pay the rental payments due in early 1987. (Plaintiff states in its complaint that the February, March and April, 1987 payments were delinquent, however, the deposition of Ms. Sherron G. Redding, legal accounts manager for plaintiff, shows that the April putting in default was in response to the February and March, 1987 payments being late—see p. 59 of her deposition, attached to the memorandum in support of defendants' motion for summary judgment.) Southeastern subsequently made all monthly payments due under the lease through March of 1987, including the payments for February and March of 1987, which were accepted by plaintiff after the notice of default and were deposited in May of 1987. By mutual agreement, the aircraft was later returned to plaintiff in June of 1987. On August 11, 1987, plaintiff sold the aircraft for $950,000 cash. The pretrial stipulations state that the aircraft originally cost plaintiff $1,800,000 plus a brokerage fee of $36,000; that the plaintiff realized an Investment Tax Credit on the plane of $180,000 for 1981, for which there was no recapture, since the lease lasted more than five years; and that plaintiff depreciated the aircraft over a five year period under the Accelerated Cost Recovery System.

In plaintiff's memorandum in support of its motion for summary judgment, it discusses various defenses pleaded affirmatively by defendants. These defenses are accord and satisfaction, equitable estoppel, failure of consideration, and payment or remission of the debt. Defendants do not discuss these defenses in their memoranda in support of their motion for summary judgment or in opposition to the plaintiff's motion. These defenses are not before the court in relation to the present motions.

Two major issues are discussed by the parties in the motions at bar: first, was the default issued by plaintiff on April 7, 1987, cured by acceptance of payment of the February and March, 1987 rents, and did the return of the aircraft terminate any obligations under the lease; if the default was not cured, and plaintiff is properly seeking damages from defendants, are the liquidated damages provided for in the lease reasonable and therefore legally enforceable under the Louisiana Lease of Movable Acts, La.R.S. 9:3325(B)?

Was the Default Cured?

The deposition of Ms. Redding, the Fed. R.Civ.P. 30(b)(6) representative of plaintiff, supplied by defendants, clearly establishes that the April 7, 1987 default related to the rental payments which were missed in February and March of 1987. [See p. 59 of deposition.] The deposition of Ms. Redding also shows that no subsequent notice of default was issued after the February and March, 1987 payments were made, to the best of Ms. Redding's knowledge. [See pp. 60–61 of Ms. Redding's deposition—attachment "A" to document # 33.]

Plaintiff here seeks damages stipulated by the lease itself (the "Casualty Value" of the aircraft.). It is clear by the very terms of the lease that plaintiff may recover damages only if the lessee was in default and if a written notice of such default had been issued. Section 18 of the lease provides that the failure to make any rental payment within ten days after the payment becomes due is an "event of default." Section 19 of the lease states that upon the occurrence of any "event of default," the lessor may declare the lease in default by written notice, and then may exercise certain options, one of which is to demand payment of the rent due along with liquidated damages "for loss of bargain and not

as a penalty, an amount equal to the Casualty Value of the Aircraft," which is calculated based on a table provided in the lease. On April 7, 1987, the default provision lease was complied with, since a letter placing defendants in default was sent to defendants on that date. [See Lease—attached to petition; and letter of default, exhibit "A" attached to affidavit of Ronald J. Rozier.]

Plaintiff contends that the default was never cured, since at the time the February and March, 1987 payments were accepted and deposited by plaintiff in May of 1987, the April, 1987 payment was in default. Plaintiff also argues that it received a letter from Prentiss E. Smith, Jr., stating that he was unable to make the rental payments. Plaintiff argues that this letter made it futile for plaintiff to give defendants any further written notice of default. [See letter from Mr. Smith, attached to Ronald J. Rozier's affidavit.]

In support of their position that the rental payment for February and March of 1987 cured the default and required another putting in default for subsequent non or late payments, the defendants rely on *Campesi v. Marino*, 506 So.2d 177 (La.App. 5th Cir.1987), which holds that when no additional rent is due, such that the notice of default no longer has a basis, then the acceptance of rent after such notice vitiates the notice. Plaintiff contends that this case supports its position that the default was not cured, since in the case at bar, the April, 1987 rent was due when the February and March, 1987 payments were accepted by plaintiff.

■ In *Adam, Inc. v. Dividend, Inc.*, 447 So.2d 80, 82 (La.App. 4th Cir.1984), the lessor provided written notice that the May and June rent of the lessee were overdue. The lessee then paid the May rent, but not the June rent. The court held that

> By accepting a part of the rent demanded, the lessor vitiated the effect of the default and the notice. Adam, Inc. was then bound to again notify Dividend, Inc. of its overdue June rent once the May rent was accepted.

This case stands for the proposition that even if the reason for the default continues, once payment is accepted for part of the amount that is in default, another written notice must be given by the lessor to collect the · rest of the amount owed. *Adam, Inc.* was followed by *Thompson v. Avenue of Americas Corp.*, 499 So.2d 1093, 1095 (La.App. 3d Cir.1986).

■ Plaintiff contends that even if the April 7, 1987 default was cured, the letter from Prentiss Smith indicated that he was unable to pay, and therefore, plaintiff did not have to engage in the "vain and useless act" of sending defendants another notice of default. The letter from Smith, however, does not indicate that he was unable to pay at all, it simply states that he was behind in his payments, and would attempt to fulfill his obligations as soon as he could.

■ Although *Adam, Inc.* and *Thompson* are cases dealing within immovable property, the parties have cited nothing, and the court has found nothing, indicating that general principles applicable to leases should not apply to the leases of movables, unless specifically abrogated by the Lease of Movables Act. Applying the principles of *Adam, Inc.* and *Thompson* to the case at bar, the April 7, 1987 default was cured by the acceptance by the lessor of partial payment of the amount owed. Section 17 of the lease provides that upon the occurrence of an event of default, so long as it continues, the lessor can notify the lessee of the default and exercise the remedy options. The default did not continue, since it was cured. Therefore, in order to be allowed to exercise the remedy options properly under the lease, plaintiff had to notify defendant in writing of the default as to at least the April, 1987 payment. Since it is undisputed that no such notice was sent, plaintiff has not complied with the terms of the lease, and is not entitled to pursue his claim in this court.

Summary judgment is appropriate under Fed.R.Civ.P. 56(c) when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law."

The parties in this case agree on the underlying material facts of this case, and, therefore, no genuine issues of material fact are in dispute. There is a dispute as to the May 13, 1987 meeting, where plaintiff says they agreed on some sort of extension of payments. Defendant disputes what transpired at the meeting. Those facts, however, are not material to the motion, since the undisputed facts show that plaintiff waived the default and issued no additional notice of default.

Resolution of this matter on the motions for summary judgment moots discussion of plaintiff's motion for determination of jury trial.

Accordingly, defendants' motion for summary judgment is hereby GRANTED, and plaintiff's motion for summary judgment is hereby DENIED and this action will be dismissed.