439 So.2d 1051 (1980)
Goldie H. KIZER
v.
Jack S. BURK
No. 66874.
Supreme Court of Louisiana.
September 3, 1980.
*1052 Roger M. Fritchie, Durrett, Hardin, Hunter, Dameron & Fritchie, for defendant-applicant.
Robert L. Kleinpeter, Kleinpeter, Kleinpeter & Kleinpeter, for plaintiff-respondent.
DIXON, Chief Justice.
Goldie Kizer brought this declaratory judgment action to terminate defendant's rights under a "Surface Lease and Agreement to Buy and Sell," to relieve plaintiff from any further obligation under the contract, and for supplemental relief. There was judgment for the plaintiff in the trial court, and the Court of Appeal affirmed. Writs were granted on defendant's application.
Plaintiff's husband, Roland Kizer, and Jack Burk were friends of long standing, both mature businessmen. In the course of frequent social encounters it was agreed that a farm in East Feliciana Parish, owned by Goldie Kizer, would be leased to Burk for three years and sold to him at the end of the lease. On August 27, 1976 a contract for the lease and purchase of the 276 acre farm, prepared by Roland Kizer, was executed by Roland and Goldie Kizer and Jack S. Burk. A copy of the lease is attached in an appendix.
Among other obligations of the contract, it provided: "The LESSEE further agrees that the cultivation of the crops and the maintenance of the pasture will be done in a good and workmanlike manner and LESSEE will carefully and faithfully guard and protect the said premises." At the time of the sale, vendors were to reserve one-half of the minerals.
This suit was filed on February 7, 1978. The abrogation of the agreement was sought for two reasons: Jack Burk had executed a timber deed on the Kizer farm on December 27, 1976, for which he had been paid $11,300, and had executed an oil and gas lease on the property on October 21, 1977.
On the representations of defendant that the timber sale and oil and gas lease were not inconsistent with the objectives of the lease, were consistent with the basic objectives of the particular contract, and were executed with the knowledge, acquiescence or subsequent approval of the parties, we granted the application for review.
The record does not support defendant's contentions. Although defendant's actions were consistent with his own plans for the development and financing of the farm, he presumed too much, and did not have the owner's consent when he dealt with property which was not his own, nor did the owner ratify defendant's actions in any way.
Kizer did not know of the timber sale until some neighbors told him of its removal in April of 1977. Kizer wrote to Burk for an explanation. Burk explained that he felt that he had the right to dispose of the timber, since he planned to clear the land so it could be in full production at the time of the purchase, when there would be substantial payments due on the purchase price and interest. Recognizing his lack of ownership of the timber, Burk suggested that he either turn the money over to Mrs. Kizer and receive a diminution in the purchase price when the sale would be completed, or keep the funds and pay interest on them until that time. There were further discussions, but no clearly determinable agreement. Kizer testified that he thought it was decided that Mrs. Kizer should take the funds; Burk thought that no determination had been communicated to him. The funds were not returned, and the "land clearing" was never completed.
As with the problem of the timber proceeds, so went the problem of the mineral lease. There was correspondence, conversation, talk of different offers, but no agreement. Burk eventually executed the mineral lease without the Kizers, even though he would own no mineral interests until the sale was made.
Under the provisions of the Civil Code, a tenant is required to utilize the *1053 leased property as a good administrator, according to the use for which it was intended by the lease. C.C. 2710(1). The landowner may obtain dissolution of the lease if the lessee makes another use of the premises than that for which it was intended, or if the lessee fails to fulfill his obligations under the lease. C.C. 2711, 2729. The lease may itself provide the purpose for which the premises are to be used and for restrictions on the use of the premises, but in the absence of such provisions, the court may look to the surrounding circumstances, such as the nature of the situation, and previous use of the property. Tullier v. Tanson Enterprises, Inc., 367 So.2d 773 (La. 1979); Comment, The Louisiana Law of Lease, 39 Tul.L.Rev. 798, 856-859 (1965).
Initially it should be noted that the sale of the timber was clearly beyond the authority granted under the agreement. At the time of the agreement and the timber sale, C.C. 465 provided:
"Standing crops and the fruits of trees not gathered, and trees before they are cut down, are likewise immovable, and are considered as part of the land to which they are attached."
Therefore, the standing timber on the leased property must be considered as a part of the leased estate. The agreement clearly did not give the lessee the power to alienate any part of the leased premises. To the contrary, the lessee agreed to faithfully and carefully guard and protect the premises. A lease is a synallagmatic contract whereby the owner of the thing leased grants to the lessee the enjoyment of the thing for a certain time. C.C. 2669, 2674. It does not give the lessee the power to alienate all or part of the leased thing. C.C. 2719.
We agree with the trial court and the Court of Appeal that the sale of the standing timber was an unintended use of the premises. In addition, we note that the sale without authority of the timber which the lessee did not own can hardly be reconciled with the defendant's duty, under the lease provisions, to faithfully and carefully guard and protect the leased premises, since he in fact alienated a part of the premises. Therefore, the plaintiff was entitled to a dissolution of the contract because of the defendant's actions. C.C. 2711, 2729.
Furthermore, the plaintiff did not waive her right to complain of the breach, or consent to the unintended use of the premises, by accepting the rent installment due on September 1, 1978. In Illinois Central Gulf R. Co. v. International Harvester Co., 368 So.2d 1009 (La.1979), this court noted that the Civil Code and statutes of this state do not provide for any legal presumption of consent to arise from a lessor's silence and acceptance of rent. We noted a number of cases from which it might appear that a lessor condones a violation of a lease by accepting rent, but concluded that those cases involved a determination that the lessor either impliedly consented to a modification of the lease or forgave a breach thereof. Among those cases were Arms v. Rodriguez, 232 La. 951, 95 So.2d 616 (La.1957) and Major v. Hall, 251 So.2d 444 (La.App.1971), cited by defendant in the instant case. After a careful review of the facts, however, we conclude that the lessor in the instant case did not consent to the use of the premises made by the defendant, or forgive him the breach.
The record indicates that, far from having consented to the timber sale, or forgiven it, at the time the 1977 rental payment was accepted the plaintiff, through her husband, was making efforts, consistent with his friendship with the defendant, to have the matter settled and her interest protected. We cannot say that merely because Mr. Kizer sought to have the matter settled amicably without resort to legal proceedings, that the plaintiff consented to the sale of the timber, or that she forgave the defendant for the breach of contract.
From a reading of the lease and purchase agreement provisions it is clear that the parties intended that the contract to sell at the termination of the lease be conditioned on the faithful performance of the obligations under the lease. C.C. 2026. The performance of those obligations was therefore a suspensive condition of the contract to sell. Since the condition failed to occur and the defendant breached the *1054 agreement, the plaintiff is under no obligation to sell the property to the defendant.[1]
For the reasons assigned, the judgment of the Court of Appeal is affirmed. Costs are to be paid by defendant-appellant.

APPENDIX

SURFACE LEASE AND AGREEMENT TO BUY AND SELL
This AGREEMENT made and entered into on the 27th day of August 1976, by and between GOLDIE H. KIZER, born Hause, married but once and then to Roland C. Kizer, who joins herein individually and to aid and authorize his wife, both of the full age of majority and residents of the Parish of East Baton Rouge, State of Louisiana, hereinafter referred to as "Lessors and/or Vendors" and JACK S. BURK, married to and living with Martha Cook Burk, born Cook of the full age of majority and a resident of the Parish of East Baton Rouge, Louisiana, hereinafter referred to "Lessee and/or Vendee."
The LESSORS, in consideration of the agreement and covenants herein made by the LESSEE, do hereby lease, let and rent to the LESSEE, who takes and hires the following described land, to wit:
A certain parcel of land, lying and being in the first ward, Parish of East Feliciana, State of Louisiana, containing Two Hundred Seventy-six and three-fourths (276¾) acres, together with all the buildings and improvements thereon, bounded North, now or formerly, by B.F. Appleby, East, now or formerly, by A.C. Watson, South, now or formerly, by A.C. Watson and Public Road, and West, now or formerly, by Mrs. C. Appleby, ONE HUNDRED TWENTY-FIVE (125) ACRES, more or less, bought by Theo. McCarstle from heirs of Stephen K. McCarstle and ONE HUNDRED TWENTY-FIVE (125) ACRES more or less acquired by Theo. McCarstle by act of donation from his father, and being the same property acquired by W.L. Hause from Theo. McCarstle by Notarial Act dated March 29th, 1919 and recorded in Notarial Book N-2 Folio 25 of the conveyance records of the Parish of East Feliciana, State of Louisiana.
The term of this lease shall be Three (3) years beginning on the first day of September, 1976, and ending on the 31st day of August, 1979.
The rent for this lease shall be the sum of TWELVE THOUSAND DOLLARS ($12,000.00), payable in the following manner: Four Thousand Dollars ($4,000.00) on the first day of September, 1976, and Four Thousand Dollars ($4,000.00) on the first day of September of each of the next succeeding Two (2) years. Failure to pay the rent as herein stipulated or to comply with any of the terms and conditions of this lease, after Ten (10) days' notice in writing by the LESSORS to the LESSEE of such failure shall, ipso facto, at the option of the LESSORS mature this lease or cause all remaining installments to become due and payable, as well as all damage incurred by the LESSORS. Such written notice is to be addressed to the LESSEE at 6088 Moss Side Lane, Baton Rouge, LA 70808.
The LESSEE further agrees that he will not sublease, assign or relinquish the said premises without the written consent of the LESSORS, nor will the LESSORS owe the LESSEE any repairs, either ordinary or extraordinary, during the term of this lease, the leased land having been inspected by LESSEE.
The LESSEE further agrees that the cultivation of the crops and the maintenance of the pasture will be done in a good and workmanlike manner and LESSEE will carefully and faithfully guard and protect the said premises.
LESSEE shall occupy the leased premises at his own cost and risk and hereby agrees to hold LESSORS free and harmless from any damages whatsoever, including but not limited to that caused by flood or overflow as well as damage, to persons or property arising out of LESSEE'S enjoyment of the leased premises and shall indemnify LESSORS *1055 against any expense, loss, cost, damage, claim, action or liability paid, suffered or incurred as a result of any breach by LESSEE, his agents, servants, employees, customers, visitors or licensees of any covenant or condition of this lease, including, without limitation, acts of omission of any subtenant, agent, servant, employee, customer, visitor or licensee of any such tenant or subtenant.
As a further consideration hereof, the VENDORS agree to sell and the VENDEE agrees to buy at the termination date of this lease, August 31, 1979, the land above described which is herein rented, the VENDORS to reserve one-half (½) of the oil, gas and other minerals.
The act of sale is to be passed before VENDEE'S Notary Public on the first day of September, 1979.
The consideration of said sale is to be the sum of TWO HUNDRED TWENTY-ONE THOUSAND FOUR HUNDRED DOLLARS ($221,400.00), of which amount Twenty-one Thousand Four Hundred Dollars ($21,400.00) is to be paid in cash, and the balance or credit portion amounting to the sum of Two Hundred Thousand Dollars ($200,000.00) is to be represented by one (1) promissory note of equal amount bearing interest at the rate of 8% per annum from date of said note until paid and being due and payable at the main office of the Fidelity National Bank of Baton Rouge, Baton Rouge, Louisiana, in Eight (8) equal yearly installments of Twenty-five Thousand Dollars ($25,000.00) each, together with the interest on the unpaid balance, the first installment being due and payable on or before the first day of September, 1980 and a like installment being due and payable on the first day of September of each of the succeeding seven (7) years thereafter, said note to be secured by a mortgage on said land importing a confession of judgment and containing a pact de non alienando and the other usual Louisiana security clauses, including a provision for attorney fees of 10% in the event of default of any covenant of said mortgage by VENDEE.
The consideration herein set forth is based upon the Consumer Price Index of 171.1 as compiled by the U.S. Department of Labor for the month of July, 1976, and anything to the contrary notwithstanding, it is agreed between the parties hereto that should the Consumer Price Index increase by as much as 25 points before the date the act of sale is passed, then and in that event the sales price and the installment payments shall be increased to the extent that the Consumer Price Index exceeds 25 points. In no event shall the sales price be reduced.
Taxes for the year 1979 are to be prorated as of the date of the execution of the act of sale.
Either party to this agreement shall have the right to specific performance in the event of failure by the other to perform.
THUS DONE AND PASSED in duplicate originals on the day, month and year first above written, in the presence of Carolyn Hembree and Patrick F. McGrew, competent witnesses who hereunto sign their names with the said appearers and me, Notary Public, after reading of the whole.
WITNESSES:
/s/ Carolyn Hembree /s/ Goldie H. Kizer 
Carolyn Hembree GOLDIE H. KIZER
/s/ Patrick F. McGrew /s/ Roland C. Kizer 
Patrick F. McGrew ROLAND C. KIZER
 /s/ Jack S. Burk 
 JACK S. BURK
 /s/ Roland C. Kizer, Jr. 
 Roland C. Kizer, Jr. - NOTARY PUBLIC
NOTES
[1] Although we do not disagree with the Court of Appeal in holding that the unauthorized mineral lease by Burk, who had not yet acquired any mineral ownership, was a detrimental use of the leased premises, it is unnecessary to decide that issue.