858 So.2d 469 (2003)
Robert G. CLAITOR, Sr., doing business as Marina Del Ray
v.
Michael DELAHOUSSAYE.
No. 2002 CA 1632.
Court of Appeal of Louisiana, First Circuit.
May 28, 2003.
Writ Denied October 17, 2003.
*472 Richard Aguilar, Edward L. Fenasci, New Orleans, for Plaintiff-Appellee, Robert G. Claitor, Sr. d/b/a Marina Del Ray.
Michael G. Gaffney, New Orleans, for Defendant-Appellant, Michael Delahoussaye.
Before: CARTER, C.J., WHIPPLE, and CIACCIO,[1] JJ.
CARTER, C.J.
Defendant, Michael Delahoussaye, appeals from a judgment of the trial court finding him liable for damages and attorney's fees under a commercial lease agreement executed on September 17, 1994, by defendant as lessee and plaintiff, Robert G. Claitor, Sr. d/b/a Marina Del Ray, as lessor. We amend the judgment, and as amended, we affirm.
Pursuant to the terms of the lease agreement, plaintiff leased space to defendant for the operation of a restaurant/bar. The lease term was for three years (commencing October 1, 1994 and ending September 30, 1997), with either party having the option to cancel the lease at the end of the first year after a sixty-day written notice. An addendum to the lease contained an option for defendant to renew the lease for two additional three-year terms. Defendant personally signed the lease as the lessee without any designation of a business or corporate name. However, on September 22, 1994, defendant changed one line in the lease agreement to reflect that his newly formed corporation, My Three Daughters, Inc. (MTD, Inc.), was the lessee. Defendant remained personally designated as the lessee in all other areas of the lease agreement, including the signature lines.
On July 5, 1995, plaintiff issued the sixty-day written notice of his intent to cancel the lease at the end of the first year. Upon receipt of the notice, defendant notified plaintiff that he had no intention of vacating the leased premises and that he wished to exercise his option to renew the lease. As a result, plaintiff filed a petition for declaratory judgment seeking a declaration *473 that he had properly terminated the lease as of September 30, 1995.[2] A trial regarding the effectiveness of the lease termination was not held until March 31, 1999, after which the case was taken under advisement. Meanwhile, defendant remained in possession of the leased premises until April 12, 1999. A declaratory judgment was finally rendered declaring that plaintiff had effectively terminated the lease as of September 30, 1995, and that defendant's right to possess and occupy the leased premises had ceased at that time. After a long delay, the trial court signed a final declaratory judgment on March 16, 2000.[3]
Before the final declaratory judgment was rendered, plaintiff filed the instant suit in a separate proceeding on November 2, 1999, for triple rent damages during the lease hold-over period, damages to the leased premises, and attorney's fees as provided in the lease.[4] Defendant filed a peremptory exception raising the objection of res judicata.[5] After a trial on September 20, 2001, the trial court issued extensive written reasons, denied defendant's exception of res judicata, rendered judgment on the merits in favor of plaintiff, awarded damages in the amount of $141,060.00 (representing $1,250.00 for damages to the leased premises and triple the $1,650.00 monthly rent stipulated in the lease for the 42-month hold-over period, with a credit for the rent paid by defendant during that period), and awarded attorney's fees in the amount of $63,190.55, plus costs, and interest. Defendant appeals from the trial court judgment, urging eight assignments of error and a peremptory exception raising the objection of prescription.

PRESCRIPTION
Defendant filed a peremptory exception raising the objection of prescription for the first time on appeal. A plea of prescription may be filed in the court of appeal any time prior to final judgment, but cannot be maintained unless the record discloses that the plea is well founded. Robin E. Owens & Associates, Inc. v. Booth, 98-0613, pp. 4-5 (La.App. 4 Cir. 2/24/99), 729 So.2d 1099, writ denied, 745 So.2d 26 (La.6/18/99). Defendant argues that plaintiff's claim for damages filed on November 2, 1999, was filed four years after the lease was effectively terminated on September 30, 1995, and was therefore filed after the three-year prescriptive period for rent arrearages provided in LSA-C.C. art. 3494(2). Plaintiff contends that his first lawsuit for declaratory judgment interrupted the prescriptive period that did not begin to run again until the date of the final declaratory judgment rendered on March 16, 2000. We agree with plaintiff and conclude that the instant suit was filed while the prescriptive period was interrupted, and before the final declaratory judgment was rendered. *474 See LSA-C.C. art. 3463; Ledoux v. City of Baton Rouge/Parish of East Baton Rouge, 99-2061, p. 5 (La.2/29/00), 755 So.2d 877, 879-880.
Louisiana Civil Code art. 3495 addresses the commencement and accrual of the three-year prescriptive period. It provides that:
This prescription commences to run from the day the payment is exigible. It accrues as to past due payments even if there is a continuation of labor, supplies, or other services. (Emphasis added.)
Comment (b) to LSA-C.C. art. 3495 states, in pertinent part:
On principle, liberative prescription commences to run from the day a cause of action arises and its judicial enforcement is possible.
Applying article 3495 to the facts of this case, we conclude that plaintiff's claim for triple rent damages during the hold-over period had not yet prescribed when he filed this lawsuit on November 2, 1999. Prescription on plaintiff's claim did not commence to run until March 16, 2000, the date of the final declaratory judgment finding that plaintiff had effectively terminated the lease and that defendant's right to occupy the leased premises had ceased as of September 30, 1995. The date of the final declaratory judgment is the date that plaintiff's claim became exigible. It is on that date, when the lease was finally declared to have been effectively terminated, that plaintiff's cause of action arose for the stipulated hold-over rent, damages and attorney's fees as provided in the lease. See Montiville v. City of Westwego, 592 So.2d 390, 391 (La. 1992). Plaintiff actually filed his claim for triple rent, damages and attorney's fees before the final declaratory judgment was rendered. Thus, we conclude that plaintiff's suit was timely filed. Defendant's peremptory exception raising the objection of prescription is hereby denied.

RES JUDICATA
In his first and seventh assignments of error, defendant contends that the trial court erred in allowing plaintiff to assert his claim for damages and attorney's fees in a separate proceeding after the case had previously been decided in the first lawsuit. Defendant argues that both lawsuits involved the same transaction (i.e., the lease agreement), the same parties, and the same damages and attorney's fees claims.[6] Defendant further argues that both lawsuits could have been litigated in the first proceeding. This court previously addressed the issue of whether a party to an action for declaratory judgment could seek supplementary relief pursuant to LSA-C.C.P. art. 1878 after the declaratory judgment rendered in the initial case was final. See State, Louisiana Riverboat Gaming Commission v. Louisiana State Police Riverboat Gaming Enforcement Division, 97-0167, pp. 3-4 (La.App. 1 Cir. 6/20/97), 696 So.2d 645, 647, writ denied, 97-1932 (La.11/7/97), 703 So.2d 1269. Where a declaratory judgment has been sought and rendered, as here, LSA-C.C.P. art. 1878 allows the court to grant further relief based upon that judgment whenever "necessary or proper." That relief is sought by means of filing a new petition, as plaintiff did in this instance.
Louisiana Code of Civil Procedure articles 1871, et seq. govern declaratory judgments, and provide that courts may *475 declare rights, status, and other legal relations, whether or not further relief is or could be claimed. LSA-C.C.P. art. 1871. Plaintiff's petition for damages was based upon the finding by declaratory judgment that the lease had been effectively terminated and that the defendant was therefore required to vacate the leased premises as of the date of termination. The fact that the declaratory judgment did not address damages or attorney's fees issues does not bar plaintiff's subsequent action for damages and attorney's fees. LSA-C.C.P. art. 1878; State, Louisiana Riverboat Gaming Commission, 696 So.2d at 647. We conclude that the trial court did not err in denying defendant's peremptory exception raising the objection of res judicata. Defendant's position is without merit. Plaintiff had a cause of action for damages and attorney's fees even though he earlier sought a declaratory judgment and even though his damages were sustained before the declaratory judgment became final. See Blaise Parking and Enterprises Corporation v. Project Square 221, 409 So.2d 691, 696 (La.App. 4 Cir.1982).

FACTUAL FINDINGS OF THE TRIAL COURT
In his second and fourth assignments of error, defendant complains about two factual findings of the trial court. Defendant first argues that the trial court erred in failing to find that he and plaintiff had mutually agreed to substitute MTD, Inc. as the lessee in the lease agreement and that therefore, defendant was not individually liable to plaintiff. Defendant next argues that the trial court erred in failing to recognize that plaintiff consented to defendant remaining in possession of the leased premises by accepting rent during the hold-over period. It is well established that an appellate court must accord deference to a trial court's factual findings on the intent of contracting parties, where those findings are reasonable and adequately supported by credible evidence, or else the appellate court must articulate the reason that the finding was manifestly erroneous. Commercial Bank & Trust Company v. Bank of Louisiana, 487 So.2d 655, 659 (La.App. 5 Cir.1986).
In its written reasons for judgment, the trial court found that plaintiff "allowed [defendant] to substitute the corporate name for his individual name on line 4 [of the lease] only as an accommodation to [defendant] for purposes of facilitating his acquisition of a liquor license and that there was no agreement by [plaintiff] that the corporation be `substituted' as the lessee or that the lease be assigned to or `assumed by the corporation." The record reasonably supports this factual conclusion.
Defendant wrote a letter on behalf of MTD, Inc. to plaintiff explaining that a copy of the lease must accompany his corporation's application for a liquor license and that in order for the license to be issued, the name of the lessee on the lease needed to be the same as his business's liquor license application. Despite this letter acknowledging defendant's motive for requesting the name change on the lease, defendant argues that he never intended to be an individual lessee under the lease. Defendant contends that he was only using his name on the lease because MTD, Inc. was not incorporated at the time the lease agreement was signed. He testified that it was always understood that the lessee was going to be MTD, Inc., and that he never agreed to personally guarantee the lease. Defendant admitted that his name appears individually on the signature lines of the lease agreement and that there is no reference to MTD, Inc. anywhere near his signature on the lease agreement. He testified *476 that the signature lines were not changed because the lease agreement that he originally signed was never intended to be the final lease. However, defendant did not offer any other version of the lease into evidence.
Plaintiff (as well as his son, Robert G. Claitor, Jr., who negotiated the lease on behalf of plaintiff) testified that the name change only occurred on one line in the lease and it was made simply to accommodate the liquor license application process for defendant's restaurant/bar business. Plaintiff (and his son) explained that the signature lines and other areas of the lease agreement designating defendant as the lessee were never changed because plaintiff never intended to release defendant from personal liability and/or any obligations under the lease.
Defendant's wife, Sharon Delahoussaye, one of his attorneys, Robert "Bubba" Burns, Jr., his brother, and Gerald Delahoussaye all testified that defendant formed MTD, Inc. in order to substitute the corporation as lessee on the lease and to avoid personal liability. The trial court obviously discounted this testimony and focused instead on the intent of the two contracting parties, plaintiff and defendant, to conclude that the corporation was not the lessee in the lease agreement.
Plaintiff (and his son) also testified that he never consented to defendant remaining in the leased premises after he gave notice of the termination of the lease and after he filed the declaratory judgment lawsuit. Plaintiff testified that he requested that defendant vacate the leased premises and he informed defendant on numerous occasions that the hold-over period described in paragraph 25 of the lease exposed defendant to triple rent damages.[7] Defendant acknowledged at trial that he knew he was in the hold-over period and that he was taking a risk by not vacating the leased premises in that he could be responsible for hold-over rent. Defendant testified that he felt he had a good argument that he was exercising his option to renew the lease, so he took the risk of not vacating the leased premises. The trial court found that, "[u]nder the circumstances, it was unreasonable for [defendant] to believe that [plaintiff] consented to his continued occupancy of the leased premises." A review of the record convinces us that the trial court was reasonable in this factual conclusion, and we conclude that defendant was well aware of the possible consequences of remaining in the leased premises after plaintiff gave notice of his intent to terminate the lease and filed the lawsuit for declaratory judgment.
We also find no merit to defendant's contention that because plaintiff continued to accept defendant's partial rental payment of $1,650.00 per month during the hold-over period, that plaintiff acquiesced or impliedly consented to defendant's occupancy during that time. The cases cited by defendant in support of this contention involve eviction proceedings and factual determinations that the lessor either impliedly consented to a modification of the lease or forgave a breach of the lease by accepting rental payments after a notice to vacate. The record in the instant case clearly shows that plaintiff chose not to initiate eviction proceedings, but rather decided to protect his interests by pursuing triple rent damages as clearly provided for in the lease agreement. The record supports the trial court's factual conclusion that plaintiff not only informed defendant *477 that he was in the lease hold-over period but that defendant knew plaintiff considered his continued occupancy to be during the hold-over period as described in the lease agreement.
Furthermore, there is no legal presumption of consent that arose from plaintiff's acceptance of the partial rental payments made by defendant during the hold-over period. See Kizer v. Burk, 439 So.2d 1051, 1053 (La.1980); see also Illinois Central Gulf Railroad Co. v. International Harvester Co., 368 So.2d 1009, 1012 (La.1979), wherein the supreme court held that the acceptance of rental payments, silence as to changes in the use of leased premises, and a delay in filing eviction proceedings did not necessarily indicate that the lessor had impliedly consented to a sublease or modification of the lease. In the case sub judice, we find that plaintiff's acceptance of the partial rental payment during the hold-over period and his notice to defendant that defendant was in default by not paying triple rent during that same period, did not constitute an implied consent to defendant's continued occupancy such that the lease could be considered reinstated or the rent amount modified. On the contrary, we find plaintiff's actions to demonstrate his lack of consent and his attempt to settle the matter amicably by enforcing the lease provision without resorting to an eviction proceeding. Thus, we will not disturb the trial court's finding of fact with respect to plaintiff's lack of consent.
After a thorough review of the record, we conclude that there was no error on the part of the trial court in its factual conclusions. The trial court was in the best position to determine the credibility of all the witnesses. We will not second-guess that credibility determination. The trial court evidently rejected defendant's contention that plaintiff knew that he was dealing with a corporate entity as lessee rather than defendant personally. Obviously, the trial court was not satisfied that both plaintiff and defendant intended to substitute the corporate name as lessee in the lease agreement when defendant changed the name on line four of the agreement but not on the signature lines. Our review of the evidence convinces us that the findings of the trial court in this regard are amply supported by the evidence and are not erroneous.
Additionally, we note that the record is void of any evidence that plaintiff was ever put on notice that he was leasing to a corporation or that a corporation was ultimately going to be the lessee in the negotiated lease agreement, even at the time the corporate name was put in the lease agreement to facilitate the liquor license application process for defendant. There is nothing in the record to show that at the time defendant signed the lease agreement, plaintiff was made aware that defendant was acting as a representative of MTD, Inc. or of the future MTD, Inc., and not in his individual capacity.[8] Given these circumstances, we see no error in the trial court's finding that defendant was individually liable under the lease agreement. We believe that defendant should have been more explicit when the corporate name was substituted on the one line in the lease agreement. Further, if it was defendant's intention to bind MTD, Inc. rather than himself personally, the signature *478 lines of the lease agreement should have been altered to reflect the corporate status of the lessee. See Butler v. Harrington, 99-2549, p. 3 (La.App. 4 Cir. 4/12/00), 761 So.2d 50, 52; Welch v. Fuhrman, 496 So.2d 484, 487 (La.App. 1 Cir. 1986); General Electric Company v. Ponder, 234 So.2d 786, 787 (La.App. 1 Cir.), writ refused, 256 La. 620, 237 So.2d 399 (1970). Accordingly, these assignments of error are without merit.

INTERPRETATION OF THE LEASE AGREEMENT
In defendant's assignments of error numbers three, five and eight, he questions the trial court's interpretation and application of several clauses in the lease agreement. The general rules of contract interpretation found in articles 2045-2057 of the Louisiana Civil Code establish that when the words of a written agreement are clear and explicit and lead to no absurd result, no further interpretation as to the common intent of the parties can be made. See Martin Exploration Company v. Amoco Production Company, 93-0349, p. 5 (La.App. 1 Cir. 5/20/94), 637 So.2d 1202, 1205, writ denied, 94-2003 (La.11/4/94), 644 So.2d 1048. Furthermore, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit. Id. When contract terms are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to the provisions in a contract, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity or show the intention of the parties. In such cases, the agreement shall be construed according to the intent of the parties. Intent is an issue of fact to be inferred from all of the surrounding circumstances. Id.
A determination of the existence or absence of an ambiguity in a contract entails a question of law. An appellate review that is not founded upon any factual findings made at the trial court level but, rather, is based upon an independent review and analysis of the contract within the four corners of the document, is not subject to the manifest error rule of law. Hawco Mfg. Co., Inc. v. Superior Chain, Inc., 98-1037, pp. 4-5 (La.App. 1 Cir. 9/24/99), 754 So.2d 1062, 1066. In such cases, appellate review is simply whether the trial court was legally correct. Martin Exploration Company, 637 So.2d at 1206.
To determine the meaning of words used in a contract, a court should give them their generally prevailing meaning. LSA-C.C. art.2047. If a word is susceptible to different meanings, it must be interpreted as having the meaning that best conforms to the object of the contract. LSA-C.C. art.2048. A provision susceptible of different meanings must be interpreted with a meaning that renders the provision effective, and not with one that renders it ineffective. LSA-C.C. art.2049. Furthermore, each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. LSA-C.C. art.2050. Doubtful provisions must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and other contracts of a like nature between the same parties. LSA-C.C. art.2053.
With these rules of contract interpretation in mind, we review de novo the provisions of the lease agreement executed by plaintiff and defendant. Paragraph 25 of the lease has a heading entitled "Surrender of Possession" and provides as follows:

*479 Upon expiration or termination of this lease, Lessee shall surrender possession of the leased premises immediately to Lessor. Any holding over by Lessee shall not operate, except by written agreement, to extend or renew this lease, but in such case, Lessor may terminate Lessee's occupancy at once or may consider such occupancy to be from month to month; and Lessee, in the event of such holding over without Lessor's consent, shall pay triple the rent stipulated in this lease, together with such loss or damage as may be caused to Lessor by such holding over. (Emphasis added.)
Defendant argues that plaintiff "cancelled" rather than "terminated" the lease, and that therefore, the triple rent provisions for holding over do not apply. However, we find that regardless of the word used, the result of the "cancellation" or "termination" of the lease was that the lease period came to an end.[9] The lease was declared effectively "terminated" as of September 30, 1995, after plaintiff sought a declaratory judgment that is now final. The key inquiry for triggering the triple rent provision is not how the lease ended or what word defined that ending, but whether plaintiff agreed/consented to defendant's continued occupancy after the lease was terminated.
As we discussed earlier, there was ample evidence for the trial court's factual determination that plaintiff did not consent to defendant's holding over. Furthermore, there was no written agreement between plaintiff and defendant allowing defendant to hold-over after the effective termination of the lease. Thus, we look to the clear and unambiguous language of Paragraph 25 in the lease agreement providing that if plaintiff did not consent to defendant's holding over, then defendant shall pay triple the rent stipulated in the lease. Given the absence of any ambiguity within the written provision, we agree with the trial court's holding that the conduct of the parties (i.e., plaintiff's effective termination of the lease and defendant's holding over on the leased premises without plaintiff's consent) triggered the triple rent provision in Paragraph 25 of the lease agreement.
Additionally, we reject defendant's argument that to apply the triple rent provision of Paragraph 25 is the equivalent of plaintiff using the lease provision to recover punitive damages. Plaintiff and defendant freely executed the lease agreement with the triple rent provision in the event that defendant continued to occupy the leased premises after plaintiff effectively terminated the lease. There is no law prohibiting such a stipulated penalty or damage provision in a lease. See Lama v. Manale, 218 La. 511, 518, 50 So.2d 15, 17 (1950), where the supreme court upheld a liquidated damages provision for five times the rent per day for every day the lessee failed to surrender possession. We are required to recognize the legal effect of all the provisions in the lease agreement and to hold the parties to a full performance of the obligations flowing from the terms of the contract. See Hawco Mfg. Co., Inc., 754 So.2d at 1066. Therefore, we find no error in the trial court's determination that plaintiff was entitled to the hold-over rent as provided in the lease.
*480 We also find that the trial court properly calculated the $1,650.00 per month rent due as it was clearly provided for in Paragraph 8 of the lease agreement. Defendant contends that the addendum to the lease agreement separated the rent into $1,200.00 per month for the actual rent and $450.00 per month for "common area maintenance" of the leased premises. We find defendant's contention to be without merit. The record clearly reveals that both plaintiff and defendant testified numerous times throughout the trial that defendant paid a total of $1,650.00 rent each month while his business occupied the leased premises. Both plaintiff and defendant agreed with the trial court's computation of the difference owed between the triple rent and the rent actually paid to arrive at the total amount due for hold-over rent to be $139,810.00. Defendant cannot now complain that the rent amount he paid under the lease agreement was a different figure. The actions of the parties throughout the lease term and the hold-over period, as well as each party's testimony at trial, supports the trial court's computation of the rent due.
Additionally, we find no merit to defendant's argument that he did not personally guarantee the performance of the lease obligations when he signed the lease agreement. As we previously discussed, the trial court reasonably concluded that defendant, not his corporation, was the lessee in the lease agreement. We further find that the clear and unambiguous language of Paragraph 47 in the lease agreement amounted to a personal guaranty by defendant as the lessee. Paragraph 47 of the lease agreement provides, in pertinent part:
the undersigned hereby makes himself or itself a party to said lease and binds himself or itself in solido with the [L]essee ... for the faithful performance and fulfillment by Lessee of all Lessee's agreements and obligations contained in said lease and guarantees to Lessor ... the punctual payment of all rents due under said lease and the performance of all other agreements and obligations of Lessee contained in said lease .... (Emphasis added.)
Defendant personally signed the lease agreement with the above-quoted guaranty language just above the signature lines. The corporate name was not substituted or inserted anywhere near the signature lines. Thus, we conclude that defendant was personally obligated to fulfill the obligations of the lease agreement he signed as lessee. For these reasons, we find that the trial court correctly determined that defendant was liable for the triple rent damages under the lease agreement.

ATTORNEY'S FEES
After a careful review of Paragraph 36 of the lease agreement, we find merit to defendant's contention in his sixth assignment of error that the trial court award for attorney's fees was excessive. An award of attorney's fees may only be made when authorized by statute or by contract between the parties. Maloney v. Oak Builders, Inc., 256 La. 85, 97, 235 So.2d 386, 390 (1970); Burns v. McDermott, Inc., 95-0195, p. 5 (La.App. 1 Cir. 11/9/95), 665 So.2d 76, 79. In the instant case, the lease agreement specifically authorized the payment of attorney's fees. Paragraph 36 of the lease agreement provided, in pertinent part:
Should an attorney be engaged by Lessor to enforce poayment (sic) of the rent due under this lease or to protect any of the interests of Lessor hereunder, with or without judicial proceedings, Lessee agrees to pay Lessor the reasonable fee of such attorney, which fee is hereby fixed, if the collection of money is involved, at 25% of the *481 amount of such money ... and Lessee also agrees to pay all court costs and other expenses incurred by Lessor. (Emphasis added.)
The trial court awarded plaintiff full reimbursement for attorney's fees incurred by him during both the declaratory judgment lawsuit and the instant lawsuit for damages, plus costs. We find the clear and unambiguous language of the lease agreement fixes the attorney's fees at 25% of the amount of money awarded to plaintiff. Therefore, since the total amount of money awarded to plaintiff for the hold-over rent and damages to the premises was $141,060.00, the attorney's fees award is limited to 25% of that amount. Under the circumstances, we find that the correct amount of attorney's fees allowed by the lease agreement is $35,265.00. The trial court erred in awarding the full amount ($63,190.55) of attorney's fees incurred by plaintiff.
Accordingly, we amend the trial court judgment by reducing the award for attorney's fees from $63,190.55 to $35,265.00 in strict accordance with the lease provisions. As amended, we affirm the trial court judgment in all other respects. Defendant/Appellant, Michael Delahoussaye, is cast with all costs of this appeal.
PEREMPTORY EXCEPTION RAISING THE OBJECTION OF PRESCRIPTION DENIED; JUDGMENT AMENDED AND AFFIRMED AS AMENDED.
CIACCIO, J., dissents with reasons.
CIACCIO, J., Dissents with Reasons.
I respectfully dissent.
A long line of cases beginning with Canal Realty and Improvement Co. v. Pailet[1] and followed most recently by A. & J. Inc. v. Ackel Real Estate, L.L.C.[2] have held that the acceptance of rent by the lessor after notice of cancellation and notice to vacate vitiates the notice and constitutes a waiver of that notice and forgiveness as to any and all previously committed infractions and serves to reinstate the lease as of that time.[3]
The Kizer v. Burk suit requested a declaratory judgment to declare a lease cancelled because of the unauthorized sale of standing timber made without the knowledge or consent of the lessor.[4] The court held that the acceptance of one rental payment under the facts of this case did not amount to a waiver of the lessor's rights. The opinion did not overrule the earlier jurisprudence but distinguished them from the facts of this case. Likewise the Illinois Central Gulf Railroad v. International Harvester Company case dealt with a lessor that was unaware that the lessee *482 was violating the terms of the lease and the receipt of rentals under those circumstances was not found to cause a waiver of the lessor's rights.[5] Neither of these two cases involved a claim for liquidated damages.
The only reported case that has awarded liquidated damages of five times the stipulated rental is Lama v. Manale,[6] wherein the lessee was cast in judgment for retaining possession of the premises after the expiration of the lease but the lessor refused to accept the tender of the rentals during the pendency of the litigation.
The plaintiff in this case was so uncertain as to the validity of his right to cancel the lease that he filed a declaratory judgment to determine if he actually had the right to cancel the lease. He did not avail himself of the summary proceeding provided by law for the eviction of tenants. There was a valid dispute over the right of the lessor to effect an early termination of the lease because of ambiguity in the language of the lease that had been drafted by the lessor. Although the notice of cancellation was issued on July 5, 1995 judgment was not rendered to confirm the cancellation of the lease until May 1999, after the defendant had vacated the premises in April 1999.
During the intervening four years the plaintiff accepted the monthly rentals that were timely tendered and, during the lengthy course of the proceedings, took no action to evict the defendant. Unlike the Lama plaintiff, Claitor did not refuse the tender of the rents nor did he deposit them in the registry of court. Unlike the Kizer and Illinois Central Gulf plaintiffs Claitor cannot claim that he was unaware of the violation of the lease while he was accepting the rental payments.
I find that Claitor's acceptance of the timely offered rentals together with his failure to take any legal action to evict the defendant evidenced his waiver of any claim for damages that may have accrued prior to the acceptance of the rentals. This is not a case of a contumacious refusal to vacate the premises after the undisputed expiration of the term of a lease. The imposition of liquidated damages is not intended to apply to a case, such as this, where there is no clear right to cancel the lease.
If the lessor had suffered any damages because of the possession of the defendant during the time of the litigation the lessor should have been required to offer proof of the actual loss he may have suffered because of his inability to collect a higher rental during the disputed period.
It is unconscionable to hold that his acceptance of the rents over this extended period of time, together with his failure to take any legal action to evict the defendant, did not constitute a waiver of his rights to claim liquidated damages of five times the stipulated rentals and to be awarded a judgment in excess of $200,000.00
For the above reasons, I would reverse the judgment of the trial court.
NOTES
[1] Hon. Philip C. Ciaccio, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Plaintiff's separate suit for declaratory judgment was filed in the 22nd Judicial District Court as case number 95-13582 on September 15, 1995.
[3] The record shows that the trial court vacated two previous judgments in case number 95-13582 (dated May 13, 1999, and May 21, 1999) and rendered a final judgment on March 16, 2000, even though a typographical error reflected the year to be 1999. Defendant appealed the declaratory judgment on May 16, 2000, but later abandoned that appeal. Thus, the issue of the effectiveness of plaintiff's termination of the lease is not before us in this appeal.
[4] The second lawsuit was filed in the 22nd Judicial District Court as suit number 99-14677.
[5] Defendant also filed various other exceptions and a motion for summary judgment, all of which were denied by the trial court.
[6] We note that plaintiff did not seek triple rent damages as stipulated in the lease in his petition for declaratory judgment, but he did reserve his right to bring that cause of action and all other claims for damages and attorney's fees in another proceeding.
[7] Three letters were introduced into evidence whereby defendant and/or his attorney were notified of the hold-over period and informed that he was in default by not paying triple the rent during the period.
[8] Generally, one who claims to be acting in a corporate capacity has a duty to disclose that he is acting as an agent for the corporation and not as an individual. The burden is upon the one claiming the agency relationship to prove he disclosed his capacity and the identity of his principal if he is to escape liability. LSA-C.C. arts. 3016-3018; Century Pools, Inc. v. Pinkstaff, 598 So.2d 1189, 1192 (La. App. 5 Cir. 1992).
[9] Black's Law Dictionary, Sixth Edition (1990), defines "[c]ancellation" as "[t]o destroy the force, effectiveness, or validity of. To annul, abrogate, or terminate.... Occurs when either party puts an end to the contract... and its effect is the same as that of `termination"' (emphasis added), and defines "[t]ermination" as "[e]nd in time or existence; close; cessation; conclusion.... With respect to a lease or contract, term refers to an ending, usually before the end of the anticipated term of the lease or contract...."
[1] 217 La. 376, 46 So.2d 303 (1950).
[2] 2002-259 (La.App. 5th Cir.2002), 831 So.2d 311.
[3] This court so held in the cases of Mitchell v. V-6 Company, Inc., 372 So.2d 645 (La.App. 1st Cir.1979) and Major v. Hall 251 So.2d 444 (La.App. 1st Cir. 1971). See also, Ernst Food Mart, Inc. v. Jackson-Atlantic, Inc., 405 So.2d 1272 (La.App. 4th Cir. 1981); Campesi v. Marino, 506 So.2d 177 (La.App. 5th Cir.1987); Flores v. Gondolier, Ltd., 375 So.2d 400 (La. App. 3rd Cir.1979); Murphy Oil Corporation v. Gonzales, 316 So.2d 175 (La.App. 4th Cir. 1975); West End Landing, Inc. v. Board of Commissioners, 299 So.2d 418 (La.App. 4th Cir. 1974); Arms v. Rodriguez, 232 La. 951, 95 So.2d 616 (1957). The majority declines to follow these cases by relying on the cases of Kizer v. Burk, 439 So.2d 1051, 1053 (La.1980) and Illinois Central Gulf Railroad Co. v. International Harvester Co., 368 So.2d 1009, 1012 (La. 1979).
[4] 439 So.2d 1051 (La.1980).
[5] 368 So.2d 1009 (La.1979).
[6] 218 La. 511, 50 So.2d 15 (1951).