MOORE, J.
| Nhe intervenors, L.A. Investment Properties Inc., LLC (“LAIP”) and its two principals, Alfred and Alva Antonini (“the Antoninis”), appeal a default judgment that quieted a tax title in favor of the tax purchaser, Northeast Realty LLC (“Northeast”), as well as an earlier judgment that fixed the value of the interve-nors’ litigious rights in this suit at $8,035.64. Finding no manifest error, we affirm.

Factual Background

The property involved is a five-tract parcel called Kingston Village Apartments, located at the corner of King Street and Blanks Avenue, near the University of *938 Louisiana in Monroe.[1] The previous record owner, Kingston Village Realty, failed to pay 1995 property taxes, and in June 1996 the property was adjudicated to a tax purchaser. This purchaser sold his tax title and it was later acquired by Northeast, an entity owned and controlled by Joseph and Edward Hakim.
In 1999, Misty Bayou LLC, an entity owned and controlled by the Antoninis, acquired the tax debtor’s interest and attempted to redeem the property. However, the Antoninis and the City of Monroe could not agree on the total tax due, so redemption never occurred.
Meanwhile a creditor, Hibernia National Bank, attempted to collect an unrelated debt of over $500,000 from the Antoninis. Northeast bought Hibernia’s interest in the matter and obtained a $544,958 judgment against the Antoninis in July 2002. This court later affirmed the bulk of that judgment. Hibernia National Bank v. Antonini, 37,836 (La.App. 2 Cir. L12/10/03), 862 So.2d 331.
Northeast filed the instant suit to quiet its tax title in August 2002. The principal defendant was Misty Bayou, against whom Northeast took a preliminary default in October 2002.[2] In October 2003, Northeast seized the Antoninis’ interest in Misty Bayou to satisfy the unpaid Hibernia judgment. A sheriffs sale was scheduled for January 7, 2004.
Shortly before the sheriffs sale, the An-toninis signed three documents on behalf of Misty Bayou. First, Misty Bayou sold its interest in the property to LAIP (which, as noted, was also controlled by the Antoninis) by assumption deed for $600,000. Second, Misty Bayou mortgaged its interest in the property for $600,000 to an entity called The Antonini Family Trust (also controlled by the An-toninis). Third, Misty Bayou sold all its interest in the instant lawsuit to LAIP for the following consideration:
This sale is made and accepted for and in consideration of the sum of one hundred and no/100 DOLLARS ($100.00), receipt of which is hereby acknowledged and full acquittance granted therefor, and other good and valuable consideration, which shall include, but not be limited to, Vendee’s undertaking the obligation to fund the legal expenses and out-of-pocket costs incurred in prosecuting the above described litigation to its final conclusion.
The act of sale was signed by Alva J. Antonini, manager of Misty Bayou, as vendor, and bore the signature line (but not the actual signature) of Alva J. Antonini, secretary of LAIP, as vendee.
These three documents were executed on January 2, 2004, while Misty Bayou’s property was under seizure in the Hibernia suit and five days | .¡prior to the sheriffs sale. Northeast purchased the An-toninis’ interest in Misty Bayou at the sheriffs sale on January 7.
In March 2004, Northeast entered another preliminary default against Misty Bayou. Because Northeast now owned all the assets of Misty Bayou, presumably Misty Bayou would not contest Northeast’s efforts to quite title.
In April 2004, the Antoninis and LAIP intervened in the instant suit, alleging that Misty Bayou had transferred its interest in *939 the property, as well as its litigious rights in this case, to LAIP. Claiming to be “former members of Misty Bayou,” they alleged that Northeast (and its principals, Joseph and Edward Hakim) had diminished their interest in Misty Bayou. Northeast responded with an exception of no right of action, which the district court sustained and this court affirmed. Northeast Realty LLC v. Misty Bayou LLC, 40,573 (La.App. 2 Cir. 1/25/06), 920 So.2d 938. The Antoninis did not take a writ from the appellate decision, so their dismissal is now final.
In August 2004, Northeast filed the instant motion to compel LAIP to sell its litigious rights under La. C.C. art. 2652. Northeast alleged that it was entitled to extinguish this obligation by paying LAIP the same $100 plus “other valuable consideration” that LAIP had received from Misty Bayou. LAIP and the Antoninis argued that the litigious rights comprised attorney fees incurred before and after the January 2, 2004 transfer of Misty Bayou to LAIP, conservation expenses associated with the property (which by this time was in serious disrepair), and the $600,000 mortgage to The Antonini Family Trust, for a total of $876,251.92. Northeast contended, however, that the trust never made any loan to Misty Bayou: when the new |4owners took over, the company was broke. Northeast also showed that Misty Bayou’s new manager, Joseph Hakim, had “waived” its right to claim attorney fees and costs from the company’s prior owners, in effect renouncing all such amounts incurred prior to January 2, 2004, as well as the $600,000 assumption note. Northeast alleged that attorney fees and costs incurred since the sale were $8,035.64, and this was the only value of the litigious right.
At a hearing on September 30, 2004, the district court heard the testimony of Misty Bayou’s current president, Joseph Hakim, and reviewed the documents pertaining to the sale of Misty Bayou. The court accepted Northeast’s interpretation of the sale and rendered judgment ordering LAIP to sell its litigious rights to Northeast for $8,035.64. After delays arising from disputes over the precise phrasing of the judgment, LAIP executed the sale of litigious rights on March 7, 2005.
On March 15, 2006, counsel for Northeast and Misty Bayou appeared for confirmation of default on the original claim to quiet the tax title. As noted, Misty Bayou acquiesced in default judgment against itself, confirming Northeast’s title to the property. The judgment enjoined Misty Bayou, the Antoninis and the other named defendants from asserting any further title in the property, and ordered the cancellation of any mortgage thereon. Counsel for LAIP and the Antoninis was not present; the preliminary default had been entered before they intervened, and the record does not show that they received notice of the confirmation hearing.
liiLAIP and the Antoninis moved for new trial, urging inter alia that they were never named as defendants in the suit to quiet title, and that The Antonini Family Trust was never served with process or notice of the confirmation hearing. The district court denied this motion after a hearing on May 5, 2006.
LAIP and the Antoninis have appealed, challenging both the valuation of the litigious rights and the propriety of the judgment quieting Northeast’s title to the property.

Discussion: The Sale of Litigious Rights

By their first assignment of error, the appellants urge the district court erred in finding that Northeast could redeem for only $8,035.64 the litigious rights sold by Misty Bayou to LAIP. They first dispute *940 Northeast’s position at trial that Misty Bayou had no right to transfer its litigious rights; however, they concede that under La. C.C. art. 2652, Northeast was entitled to purchase those rights “by tendering appropriate consideration to LAIP.” They contend, as they did at trial, that the litigious rights comprised (1) unfunded legal fees and expenses in connection with the defense of the suit to quiet title and associated proceedings; (2) attorney fees for the preparation of the various transfer documents; (3) vendor expenses incurred in attempting to maintain custody and control of the property; and (4) the collateral mortgage with a face value of $600,000. They submit that these items total $872,123.55. Next, the appellants concede that Joseph Hakim testified he would waive the attorney fees incurred by Misty Bayou before he acquired it, but “it is axiomatic and does not need citation to say that the hnew owners of an LLC cannot waive debts that the LLC owes to third parties simply because the new owners acquire their ownership interest at a sheriff sale.” Finally, the appellants argue the district court “completely misconstrued the act of sale in question,” ignoring the use of the word incurred, and missing the clear intent for LAIP to pay Misty Bayou’s attorney fees in excess of $40,000, “vendor services” in excess of $200,000, and other costs. They conclude that the district court must have found the act of sale ambiguous, and this finding is subject to de novo review. Claitor v. Delahoussaye, 2002-1632 (La.App. 1 Cir. 5/28/03), 858 So.2d 469, writ denied, 2003-1820 (La.10/17/03), 855 So.2d 764.
Northeast responds that the key to interpreting the act of sale is not the word incurred but rather the words shall include, to fund, and the whole phrase incurred in prosecuting: taken as a whole, the act of sale shows an intent to include only the attorney fees and maintenance costs that accrued after January 2, 2004. Factually, it contends that the statement of attorney fees does not indicate how much was owed by Misty Bayou for the defense of this suit, and how much was owed by LAIP and the Antoninis for related and unrelated matters; it also cites counsel’s admission that all fees were “unfunded.” It also challenges the ambiguous charge of $227,175.31 for “vendor services.” Finally, it contends that Misty Bayou’s records contained no evidence that the company ever received the $600,000 for which the mortgage was granted, and it cites an answer to interrogatories in which the appellants admitted “the ‘other valuable consideration’ has no dollar value.” It concludes that the judgment is not plainly wrong.
|7Two of the appellants’ contentions are valid. By the act of sale dated January 2, 2004, Misty Bayou purported to sell “all of its right, title and interest in and to” the instant lawsuit, clearly an assignment of litigious rights. When a litigious right is assigned, “the debtor may extinguish his obligation by paying to the assignee the price the assignee paid for the assignment, with interest from the time of the assignment.” La. C.C. art. 2652. The appellants correctly concede that under this article, Northeast was entitled to purchase the litigious rights. Second, at the hearing on September 30, 2004, Joseph Hakim purported to “waive any rights and obligations that exist in favor of LAIP as a result of these transactions.” The appellants correctly show that there is no provision of law that would permit the new owner of a business to “waive” the debts and obligations contracted before he or she took control.
The issue, therefore, is whether the district court properly valued the litigious right. The interpretation of a contract is *941 the determination of the common intent of the parties with the courts giving the contractual words their generally prevailing meaning unless the words have acquired a technical meaning. La. C.C. arts. 2045, 2047; Campbell v. Melton, 2001-2578 (La.5/14/02), 817 So.2d 69. A doubtful provision must be interpreted in light of, inter alia, the conduct of the parties before and after the formation of the contract. La. C.C. art. 2058. Contract interpretation of ambiguous terms requires construction against the contract’s drafter. La. C.C. art. 2056; Campbell v. Melton, supra. Factual findings which are pertinent to the interpretation of a contract will not be disturbed absent 18manifest error. Campbell v. Melton, supra; Murray v. German Mut. Ins. Co., 37,697 (La.App. 2 Cir. 9/24/03), 856 So.2d 81, unit denied, 2003-3168 (La.2/13/04), 867 So.2d 698.
The act of sale recited as consideration “the Vendee’s undertaking the obligation to fund the legal expenses and out-of-pocket costs incurred in prosecuting the above described litigation to its final conclusion.” The appellants urge that incurred is in the past tense and thus encompasses attorney fees and costs going back to the beginning of the controversy. More precisely, however, incurred (as used in this sentence) is a past participle serving as an adjective modifying expenses and costs, and does not necessarily convey a sense of past completed action. The use of incurred does not mandate a finding that LAIP would assume the obligation to pay all attorney fees and costs, including those already accrued and those not yet accrued.
The district court apparently found that the phrase undertaking the obligation to fund meant a promise to pay fees’ and costs to be accrued, and we cannot declare this plainly wrong. The act of sale did not recite any amount of past fees and costs, mention any summary or statement, or provide any means by which such fees and costs could be ascertained. Had the parties intended to include past expenses, they could have stated them explicitly. Moreover, the act of sale was supplied by Alva J. Antonini, manager of Misty Bayou, as vendor, and accepted by Alva J. Antoni-ni, manager of LAIP, as vendee. The Antoninis owned and controlled both businesses and executed the sale to frustrate Northeast’s attempt to acquire | ¡¡their assets; any ambiguity in the sale must be construed against the Antoninis and in favor of Northeast. On this record, we cannot say the district court was plainly wrong to find that the consideration for the sale included only those legal fees and out-of-pocket expenses that arose after the date of the sale, January 2, 2004.
The district court also refused to consider, as an element of the litigious right, the $600,000 collateral mortgage. This court has already noted that the transactions of January 2, 2004 were suspect and ineffective. Misty Bayou LLC v. Northeast Realty LLC, supra at p. 2, 920 So.2d at 940. At the hearing on September 30, 2004, Joseph Hakim testified that he could not find in Misty Bayou’s financial records any evidence that Misty Bayou received the funds represented by the promissory note or, if it did, how it spent them. Aside from the argument of counsel, the appellants have offered no positive proof.[3] While this record may not be sufficient to support a finding of fraud or monetary instrument abuse, it certainly supports the *942 finding that no actual value was given in exchange for the collateral mortgage. The district court was not plainly wrong to exclude this as an element of the litigious rights.
The district court was not plainly wrong to find that the litigious rights included the $100 stated in the act of sale, and the documented amounts of attorney fees, expenses and travel that accrued after January 2, 2004. This assignment of error lacks merit.
| judgment to Quiet Tax Title
By their second assignment, the appellants urge the district court erred in quieting Northeast’s title and canceling the mortgage in favor of The Antonini Family Trust by default. It contends the court lacked authority to render judgment that precluded Misty Bayou’s “heirs, successors, assigns * * * from claiming or setting up any right, title or interest in and to” the property. According to the appellants, LAIP clearly had an interest in the property, having intervened in the suit and formally adopted all of Misty Bayou’s pleadings, but Northeast never joined it as a defendant and never obtained service on either LAIP or The Antonini Family Trust. They contend the lack of service vitiates the default judgment under La. C.C.P. arts. 1701 and 1702.
Northeast reiterates that the three transactions orchestrated by the Antoninis on January 2, 2004, were an attempt to defraud their creditors. It contends that LAIP did not timely appeal the judgment (October 24, 2004) that ordered it to sell the litigious rights to Northeast; thus the judgment was final. After LAIP complied, it was no longer a party to the suit to quiet title, and hence entitled to no notice of a confirmation hearing. Northeast also contends that the judgment was completely appropriate because a tax deed “in the conveyance or mortgage office shall operate as a cancellation of all conventional and judicial mortgages.” La. R.S. 47:2183 B.
Northeast’s position has merit. In Northeast Realty LLC v. Misty Bayou LLC, supra, this court held that the An-toninis had no right of action to intervene in this suit. We decline to revisit that holding under the guise |t1that the Anton-inis were somehow entitled to notice of a hearing in a suit from which they had been dismissed. LAIP complied with the district court’s order on March 7, 2005, by executing the sale of “all of its rights which it acquired from Misty Bayou LLC in connection with” the instant suit. “All of its rights” obviously included claims which LAIP may have adopted from Misty Bayou to defeat the suit to quiet title. On this showing, the court was entitled to find that LAIP had no more interest in the litigation and was due no notice of confirmation under La. C.C.P. art. 1702 A.[4]
The remaining issue is the scope of the judgment to quiet title. The appellants contend it could not erase the collateral mortgage in favor of The Antonini Family Trust.
A tax deed by a tax collector is prima facie evidence that a valid sale was made. La. Const, art. 7, § 25; Sunset Realty Inc. v. Antonini, 36,788 (La.App. 2 Cir. 1/29/03), 836 So.2d 1173. The procedure for a suit to quiet tax title is prescribed by La. R.S. 47:2228; however, the appellants *943 do not allege, and we do not perceive, that any of these provisions were disregarded. Further, “If not redeemed, such record [tax deed] in the conveyance or mortgage office shall operate as a cancellation of all conventional and judicial mortgages[.]” La. R.S. 47:2183 B (emphasis added). The statute makes no distinction between mortgages placed before or after the tax sale; it cancels all such mortgages. The provision would be meaningless if it permitted a tax debtor who faded to redeem his or her 112property through the redemption process simply to grant mortgages on it and thereby frustrate the title of the tax purchaser. The district court did not err in rendering judgment that conforms with R.S. 47:2183 B. This assignment of error lacks merit.

Conclusion

For the reasons expressed, the judgments are affirmed. All costs are to be paid by the appellants, Alfred J. Antonini, Alva J. Antonini and L.A. Investment Properties Inc., LLC.
AFFIRMED.

. The buildings are unoccupied and derelict at this time.

. The other two defendants were Kingston Village Realty, the original tax debtor, and Sunset Realty, the company from which Northeast had bought the tax deed. Sunset Really is controlled by Joseph Hakim and was aligned with Northeast throughout this litigation.

. Northeast also challenged the Antoninis’ claim that they spent $227,175 in “vendor services” to preserve the property while they controlled Misty Bayou. The record itself is not entirely clear, but such an expenditure is certainly not apparent from the advanced dilapidation of the Kingston Village Apartments.

. By separate writing, LAIP purported to reserve its right to appeal the 2004 judgment ordering it to sell its litigious rights to Northeast. In briefs to this court, the parties dispute whether the 2004 judgment was merely interlocutory, or a partial final judgment and immediately appealable under La. C.C.P. art. 1915. In the interest of judicial economy, we pretermit any consideration of this issue as by this opinion we have reviewed and affirmed the 2004 judgment.